1 MARK L. KIEFER, ESQ., SB# 116633
2 mkiefer@ericksenarbuthnot.com
ROYCE Y. HUANG, ESQ. SB# 285136
3 rhuang@ericksenarbuthnot.com
ERICKSEN ARBUTHNOT
4 835 Wilshire Blvd., Suite 500
Los Angeles, CA  90017-2603
5 (213) 489-4411 / (213) 489-4332 Fax

6 Attorneys for Defendants MICHAEL STEWART, PH.D. and LIBERTY
HEALTHCARE OF CALIFORNIA, INC. and Cross-Claim Defendants
7 MICHAEL STEWART, PH.D. and LIBERTY HEALTHCARE
CORPORATION
8

9           UNITED STATES DISTRICT COURT FOR THE

10              SOUTHERN DISTRICT OF CALIFORNIA

11

12 THOMAS RAINEY, Conservator, on )   CASE NO: 19-cv-01650-L-AGS
behalf of COLLEEN GAROT,        )
13                              )   **DEFENDANTS MICHAEL**
         Plaintiff,             )   **STEWART, PH.D. and LIBERTY**
14                              )   **HEALTHCARE OF CALIFORNIA,**
         vs.                    )   **INC.'S MEMORANDUM OF**
15                              )   **POINTS AND AUTHORITIES IN**
COUNTY OF SAN DIEGO, et a       )   **SUPPORT OF THEIR MOTION**
16                              )   **FOR SUMMARY JUDGMENT, OR**
         Defendants.            )   **IN THE ALTERNATIVE, PARTIAL**
17                              )   **SUMMARY JUDGMENT**
                                )
18 AND RELATED CROSS-CLAIMS      )   **[NO ORAL ARGUMENT**
                                )   **PURSUANT TO LOCAL RULES]**
19
20                                  [COORDINATED WITH THE MSJ OF
                                    CROSS-DEFENDANTS  MICHAEL
21                                  STEWART, PH.D. and LIBERTY
                                    HEALTHCARE CORPORATION
22                                  AGAINST CROSS-CLAIMANT
                                    COUNTY OF SAN DIEGO]
23
                                    Judge:  M. James Lorenz
24                                  Dept:   5B
                                    Date:   October 21, 2022
25                                  Time:   2:00 p.m.
26                                  Trial Date:  None Set

27       **COMES  NOW,  DEFENDANTS  MICHAEL  STEWART,  PH.D.**

28 **and LIBERTY HEALTHCARE OF CALIFORNIA, INC.** hereby submit

this memorandum of points and authorities in support of their motion for summary judgment, or in the alternative, motion for partial summary judgment.

DATED: August 23, 2022

ERICKSEN ARBUTHNOT

/s/ Mark L. Kiefer

By: _____
MARK L. KIEFER, ESQ.
ROYCE Y. HUANG, ESQ.
Attorneys for Defendants,
MICHAEL STEWART, PH.D. and LIBERTY
HEALTHCARE OF CALIFORNIA, INC. and
Cross-Claim Defendants MICHAEL
STEWART, PH.D. and LIBERTY
HEALTHCARE CORPORATION

# TABLE OF CONTENTS

Page

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

II.  STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.   Garot's Criminal Conviction . . . . . . . . . . . . . . . . . . . . . . . . . 9

     B.   Garot's Resulting Detention Beginning April 13, 2018  . . . .  10

     C.   Plaintiff makes some vague statement about potential
          Self-harm; Stewart is asked to perform a focused suicide
          risk assessment through the food slot of the safety cell
          watch cell door . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

     D.   Stewart conducts a suicide risk assessment of plaintiff . . .   11

     E.   Plaintiff is cleared from the suicide watch cell . . . . . . . . .   12

III. LEGAL STANDARD FOR SUMMARY JUDGMENT . . . . . . . . .12

IV.  ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

     A. Plaintiff's First Cause of Action for Deliberate Indifference
     to a Substantial Risk of Harm Fails as a Matter of Law. . . . . . . . . 13

          1. The Cause of Action Should Be Analyzed under the 8th
          Amendment, Not the 14th Amendment. . . . . . . . . . . . . . . . 13

          2. Stewart Did Not Violate Garot's Eighth Amendment
          Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

               a. Stewart's Course of Treatment was not
               Medically Unacceptable Under the Circumstances
               From An Objective Standpoint . . . . . . . . . . . . . . . . 15

b. Stewart Did Not Have a Subjectively Culpable
State of Mind to Support the Claim . . . . . . . . . . . . . 19

c.  Plaintiffs Are Not Entitled to Punitive Damages 20

B.    Plaintiffs' Third Cause of Action for
Professional Negligence Fails as a Matter of Law. . . . . . . 21

C.    Plaintiffs' Claim Against Liberty Healthcare
Corporation Fails as a Matter of Law. . . . . . . . . . . . . . . . 22

1.    LHC is not Vicariously Liable if Stewart is not
Found Liable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

2.    LHC May be Dismissed if the Claims Against
Stewart Are Dismissed . . . . . . . . . . . . . . . . . . . . . . . . 22

3.    Plaintiffs' Claim for Punitive Damages Fails. . . . .  23

D.    Plaintiffs' Fourth Cause of Action for Failure to
Summon Medical Care Fails as a Matter of Law . . . . . . . . 23

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

DEFENDANTS MICHAEL STEWART AND LIBERTY HEALTHCARE OF CALIFORNIA, INC.'S NOTICE OF
MOTION /MOTION FOR SUMMARY JUDGMENT, OR FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

*FEDERAL CASES*

*Bell v. Wolfish* 441 U.S. 520, 535 (1979). . . . . . . . . . . . . . . . . . . . . . . . . 13

*Celotex Corp. v. Catrett* 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . .  12

*Dang v. Cross* 422 F.3d 800 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . 20

*Edmo v. Corizon, Inc.* 949 F.3d 489 (9th Cir. 2020). .. . . . . . . . . . .. . 16, 19

*Estate of Wilson v. County of San Diego* 2022 WL 789127
    (S.D. Cal. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Estelle v. Gamble* 429 U.S. 97 (1976). . . . . . . . . . . . . . . . . . . . . . . .13, 15

*Farmer v. Brennan* 511 U.S. 825 (1994). . . . . . . . . . . . . . . . . . . . .  15, 19

*Flores v. City of Fresno* 2020 WL 4339825 (E.D. Cal. 2020).. . . . . . .. . .14

*Flores v. Mesenbourg* 116 F.3d 483, No. 95 17241,
    1997 WL 303277 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gregg v. Georgia* 428 U.S. 153 (1976). . . . . . . . . . . . . . . . . . . . . . . .  15

*Horton v. City of Santa Maria,* 915 D.3d 592, 608 (9th Cir 2019)  . . . . . . 24

*Hutchinson v. United States* 838 F.2d 390 (9th Cir. 1988). . . . . . . . . . . . 21

*Jackson v. McIntosh* 90 F.3d 330 (9th Cir. 1996). . . . . . . . . . . . . . . . . 16, 19

*Jensen v. County of Los Angeles* 2017 WL 10574058 (C.D. Cal. 2017). .  14

*Kyle v. Patterson* 196 F.3d 695 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . 21

*Newsome v. Higham* 2010 WL 1258013 (M.D. Ga. 2010).. . . . . . . . . . . 14

*Nordenstrom v. Corizon Health, Inc.* 2021 WL 2546275 (D. Or. 2021). . 14

*Rivers v. Reilly* 2020 WL 1330746 (E.D. Pa. 2020). . . . . . . . . . . . . . . .  14

*Sanchez v. Vild* 891 F.2d 240 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . 16

*Sandoval v. County of San Diego* 985 F.3d 657 (9th Cir. 2021). . . . . . . . 13

*Smith v. Wade* 461 U.S. 30 (1983). . . . . . . . . . . . . . . . . . .. . . . . . 20, 21

**FEDERAL STATUTES**

Federal Rules of Civil Procedure 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rules of Civil Procedure 56(g) . . . . . . . . . . . . . . . . . . . . . . . . .13

Federal Statutes 42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

**STATE CASES**

*Adams v. Boyce*, 37 Cal.App.2d 541(1940) . . . . . . . . . . . . . . . . . . . . .  19

*Beni v. Abrons*, 130 Cal.App. 206  . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hanson v. Grode* 76 Cal.App.4th 601 (1997). . . . . . . . . . . . . . . . . . . . 21

*Hesler v. California Hospital Co.* 178 Cal.764, 766-767 (1918) . . . . . . 19

*Hinman v. Westinghouse Elec. Co.* 2 Cal.3d 956 (1970).. . . . . . . . . . . .  22

*Huffman v. Lindquist,* 37 Cal.2d 465 (1951) . . . . . . . . . . . . . . . . . . .  19

*Jensen v. Findley*, 17 Cal.App.2d 536 (1936) . . . . . . . . . . . . . . . . . .. . 19

*Johnson v. Clarke*, 98 Cal.App.358 (1929) . . . . . . . . . . . . . . . . . . . . . . 19

*Lathrop v. Healthcare Ptnrs, et al.,* 114 Cal.App.4th 1412 (2004). .  22, 23

*Markart v. Zelmer*, 67 Cal.App. 363 (1924) . .. . . . . . . . . . . . . . . . . . . 19

*Perkins v. Trueblood*, 180 Cal. 437 (1919) . . . . . . . . . . . . . . . . . . . . . . 19

*Rising v. Veatch*, 117 Cal.App. 404 (1931) . . . . . . . . . . . . . . . . . . . . . 19

*Samson v. Ross-Loos Medical Group*, 57 Cal.App.2d (1943) . . . . . . . . . 19

### *STATE STATUTES*

*Civil Code* § 3294. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*California Government Code* § 845.6 . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Vehicle Code* § 23152. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# I.

## INTRODUCTION

The claim before this Court is no more, nor less, than a California medical malpractice claim for **failure to diagnose a skull fracture and bleeding in the brain (intraventricular hemorrhage)**.  Onto it are thrown various 42 USC Sec. 1983 claims.

While such a claim, in the abstract, may be appropriate against parties who conducted **medical** examinations of Plaintiff Colleen Garot (due to her black eye), such a claim fails on summary judgment as to Defendant Michael Stewart. Stewart is *not* a medical doctor; he *is* a psychologist. Stewart *never* conducted any *medical* examination of Plaintiff, period.

Because Plaintiff had made some vague statement to a deputy about potential self-harm, she was put into a suicide watch safety cell (naked, under a tear-resistant vest closed with Velcro straps). The cell consisted of nothing more than a small room, a metal grate in the floor into which she could defecate and urinate, a heavy, locked steel door with a narrow window in it, and a food slot in the door that a deputy could lock/unlock. Stewart was asked to assess Plaintiff for suicidality.

 Not permitted to enter the cell due to County-imposed safety protocols, Stewart performed a suicide risk assessment of Garot by looking at/talking to her through the food slot.  A deputy stood by.

As a result of this *focused, limited suicide risk assessment,* Stewart found that Garot was **not at risk for suicide**.  As a result, Garot was freed from the restrictive environment of the suicide watch cell and allowed to return to EOH (extended observation housing).

Before and after Stewart's suicide risk assessment, Plaintiff was seen by other medical personnel who continued to address Plaintiff's black eye and her *medical* situation. Stewart had no role in this, period.  After being

released from the suicide watch cell, Garot was transferred from Vista Detention Center to Las Colinas Detention and Reentry Facility. There, she came under the watch of other *medical* providers. It is at Las Colinas where Plaintiff collapsed, was taken to a hospital, and a skull fracture and brain bleed were discovered.

**Stewart does not belong in a failure to diagnose skull fracture/brain bleed case**. If Plaintiff had committed suicide after being seen by Stewart, that might have been a different story.  Nor is there a scintilla of evidence that Stewart acted with "conscious disregard" as is required for any Section 1983 claims.

## II.

## STATEMENT OF FACTS

### A. Garot's Criminal Conviction

On May 5, 2016, Garot was arrested for violation of California Vehicle Code § 23152, driving under the influence of alcohol ("DUI"). (Exh. A.) Garot was ultimately charged with three criminal counts related to this DUI on September 13, 2017. (Exh. B.) On October 17, 2017, Garot plead guilty to this first charge. (Exh.C.) On December 1, 2017, the state court ordered Garot into the multiple conviction program for criminals with more than one DUI conviction ("DUIP") as part of her sentence. (Exh. D.) In its post-sentence minutes on January 18, 2018, the state court noted that Garot was on probation. (Exh. H.) The state court ordered Garot to report to the San Diego County Jail for confinement beginning at 8:00 a.m. on January 30, 2018 as part of her sentence. (Exh. E.) Garot failed to  report and therefore failed to comply with her sentence. (Ibid.) On February 22, 2018, the state court summarily revoked Garot's probation due to Garot's failure to comply with the court order of self-surrendering to the San Diego County Jail for 96 hours and issued a bench warrant without bail. (Exh. F.)

### B. Garot's Resulting Detention Beginning April 13, 2018

On April 13, 2018, while serving Garot with an unrelated Court Ordered Eviction, Sheriff Deputies discovered the bench warrant based on her previous DUI conviction. (Exh. G.) As a result of the warrant, Deputies detained Garot and transported her to Vista Detention Facility ("VDF") where she was booked. (Ibid.)

### C. Plaintiff makes some vague statement about potential self-harm; Stewart is asked to perform a focused suicide risk assessment through the food slot of the safety cell watch cell door

While in custody at VDF, Plaintiff Colleen Garot made some vague statement to a deputy about possibly hurting herself (Exh. "I"). Her name was given to Michael Stewart, Ph.D. on a list prepared by the Deputy and/or the Charge Nurse (Exh. "J") and Stewart was asked to see her.

Stewart followed the permitted custom and practice established by County of San Diego at the Vista Detention Center for conducting what is sometimes referred to as a "cell-side" suicide risk assessment. This involved conducting the assessment through a food flap in the door of the safety cell, not by entering the safety cell itself, and not by having the inmate/patient removed from the safety cell. The stated County rationale for this policy and procedure was to ensure the safety not only of the inmate/patient, but also for the safety of the examiner conducting the suicide risk assessment, and other staff (Exh. "J").

Ms. Garot had previously been placed in the locked safety cell prior to Stewart's arrival. Ms. Garot would have been previously instructed by the Deputy to sit on the floor of the safety cell (Exh. "J").

In Stewart's encounter, he sat on a stool outside of the safety cell and spoke to Ms. Garot through the deputy-opened food flap. He encountered Ms. Garot seated on the floor, on the left as one would enter the cell, her

1    back against the wall (Exh. "J").

2         Plaintiff Garot would have been looking straight ahead for the most

3    part.  There was a narrow, vertical window in the door, which was the only

4    view into the room other than through the food flap (Exh. "J").

5        **D.**    **Stewart conducts a suicide risk assessment of Plaintiff**

6         Stewart's suicide risk assessment chart note say this:

7
Psychologist Initial Evaluation
8
9    HISTORY OF PRESENT ILLNESS: Pt. is a 45 y/o female who was
     arrested 4/13/18 with a charge of DUI. She was moved to safety cell
10   today 4/15/18 after she began repeated, nonsensical statements over
     intercom to staff, incl then a statement about hurting herself. This is
11   first evaluation for this ISP.

12   Pt seen at safety cell. Required prompting to cover herself
     appropriately, then engaged w fair eye contact, appearing alert and
13   attentive. She evidenced significant disorganized TP and inconsistent
     self-report. She also reports memory pxs. Pt presented w contradicting
14   and odd statements suggesting poor reality testing. She states she thinks
     she is currently in a store. She reported vague c/o possible visual halluc,
15   as in a dragon fly on her arm, seeing a Cowboy. Possibly responding to
     stimuli during this interview, AEB turning to her side and saying
16   something as if to another person.
17
18   PT denies any SI or HI current or recent. She states not recalling
     making a statement of SI.
19
20   PSYCHIATRIC HISTORY:
     Prior diagnoses/treatment: Unable to reliably assess due to PT poor
21   historian and contradicting statements. She initially denies any hx of
     inpt psych tx, then reports x1 inpt at Alvarado ? fa took her due to SI,
22   approx. 4 yrs ago. She denies any SA. Reports medication tx w
     Seraquel from 2000 to last year, reportedly for insomnia.
23
24   SUBSTANCE ABUSE HISTORY: Unable to reliably assess. Pt makes
     multiple contradicting statements regarding alcohol and drugs. She has
25   been heavy drinker; states last use 1 week ago. Denies other drugs then
     reports 2 months ago using a drug she cannot name. She is unclear on
26   when she last used marij.
27
28   SOCIAL HISTORY:
     She reports living in a mobile home w her 12 and 14 y/o children,
     unemployed. Divorced 8 yrs ago.

CURRENT MENTAL STATUS: PT presents w controlled beh. She is alert while appearing to experience probable psychotic processes w disturbed perception (VH and possible AH), very disorganized TP and significant confusion. She was anxious while reporting "happy" mood incongruent to her complaints; affect was full. She denies current or recent SI and HI

DIAGNOSTIC:
F29 unspecified psychosis
r/o substance-induced psychosis

RISK ASSESSMENT: Current Risk Level: Low
-RISK FACTORS: Incarceration, Apparent psychosis sxs w impaired fx, Limited access to support
-PROTECTIVE FACTORS: Little access to means, in a controlled environment, No self-harm while in observation, Denying any SI or HI

PLAN:
CTO, can move to EOH, low risk
f/up in 1 day
-----------

(Exh. "I").

### E.   Plaintiff is cleared from the suicide watch cell

As a result of Stewart's assessment, he determined Ms. Garot to be a low risk for self-harming behavior. He determined that she could be cleared from the safety cell and could move to EOH with follow up in one day (Exh. "I").

### III.

### LEGAL STANDARD FOR SUMMARY JUDGMENT

This Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to show that there is no triable factual issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the burden shifts to the non-moving party to show that there is a genuine factual issue for trial. *Id.* at 324. The Court may grant summary judgment on all relief requested or

may grant partial summary judgment as to those claims which can be summarily adjudicated. Fed. R. Civ. P. 56(g).

## IV.

## ARGUMENT

**A. Plaintiffs' First Cause of Action for Deliberate Indifference to a Substantial Risk of Harm Fails as a Matter of Law**

Plaintiffs claim deliberate indifference to a substantial risk of harm against Stewart via 42 U.S.C. § 1983 (First Cause of Action, Third Amended Complaint).

**1. The Cause of Action Should Be Analyzed Under the 8th Amendment, Not the 14th Amendment**

The Ninth Circuit in *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) explained which constitutional framework to use in the deliberate indifference to serious medical needs analysis as follows: Individuals in state custody have a constitutional right to medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). For inmates serving custodial sentences following a criminal conviction, that right is part of the Eighth Amendment's guarantee against cruel and unusual punishment. *Id.* However, pretrial detainees have not yet been convicted of a crime and therefore are not subject to punishment by the state. Accordingly, their rights arise under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535- 36, 535 n.16.

Detentions *because of* a person's conviction are analyzed under the Eighth Amendment. In an unpublished Ninth Circuit decision, *Flores v. Mesenbourg*, 116 F.3d 483, No. 95 17241, 1997 WL 303277 (9th Cir. 1997), the Ninth Circuit "[had] little difficulty concluding that the Eighth Amendment provide[d] the proper standard" of analysis of a person who was incarcerated because of a parole violation "because he had originally been

1  convicted and given the sentence which was moderated by parole. His

2  original conviction [was] the authority under which he was confined after his

3  parole violation." *Ibid.*

4  Similarly, the Central District of California applied the Eighth

5  Amendment analysis to a person detained for a parole violation, *Jensen v.*

6  *County of Los Angeles*, 2017 WL 10574058, at *7 (C.D. Cal. 2017), as did

7  the Eastern District of California, *Flores v. City of Fresno*, 2020 WL

8  4339825 (E.D. Cal. 2020). Another district in the Ninth Circuit found that a

9  person detained due to a parole violation would be analyzed under the

10  Eighth Amendment because the conviction "supplied the basis for his

11  punishment[.]" *Nordenstrom v. Corizon Health, Inc.*, 2021 WL 2546275 (D.

12  Or. 2021).

13  Other districts in other circuits have applied the Eighth Amendment

14  analysis under similar post-conviction detentions. *Newsome v. Higham*, 2010

15  WL 1258013, at *2 (M.D. Ga. 2010) [detained due to a probation violation];

16  *Rivers v. Reilly*, 2020 WL 1330746, at *4 (E.D. Pa. 2020). [person detained

17  due to a probation violation]. Earlier this year, after analyzing much of the

18  above case law, this Court held that detentions due to violation of parole,

19  probation, or post release supervision are analyzed under the Eighth

20  Amendment. *Estate of Wilson v. County of San Diego*, 2022 WL 789127

21  (S.D. Cal. 2022), 3:20-cv-00457-BAS-DEB Dkt. No. 62 at 24-28.

22  Here, Garot would not have been detained and placed in jail but for

23  her DUI conviction. Garot was on probation to complete the DUI program.

24  But, Garot did not complete the DUI program since she failed to report to a

25  self-surrender 96 hour confinement. As a direct result of this violation,

26  Garot's probation was revoked and a warrant issued to detain her and take

27  her to jail, which is what happened. Garot was in jail beginning April 13,

28  2018 because of her DUI conviction and subsequent probation violation and

1  revocation. Therefore, the Eighth Amendment applies.

2  **2. Stewart Did Not Violate Garot's Eighth Amendment**
3  **Rights**

4      The Eighth Amendment prohibits punishment which constitutes the
5  "unnecessary and wanton infliction of pain[.]" *Estelle v. Gamble*, 429 U.S.
6  97, 103 (1976) ("*Estelle*"), quoting *Gregg v. Georgia*, 428 U.S. 153, 173
7  (1976). The Eighth Amendment is violated when prison officials are
8  deliberately indifferent to a prisoner's serious medical needs. *Ibid.*, without
9  supplemental quotation. A party is deliberately indifferent under the Eighth
10 Amendment as follows:

11     [A] prison official violates the Eighth Amendment only when two
12     requirements are met. First, the deprivation alleged must be,
13     objectively, "sufficiently serious," [Citation.]; a prison official's act or
14     omission must result in the denial of "the minimal civilized measure
15     of life's necessities[.]" [Citation.] [...]

16     The second requirement follows from the principle that "only the
17 unnecessary and wanton infliction of pain implicates the Eighth
18 Amendment." [Citation.] To violate the Cruel and Unusual Punishments
19 Clause, a prison official must have a "sufficiently culpable state of mind."
20 [Citation.] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("*Farmer*"). A
21 plaintiff must prove both objective and subjective elements to state a claim.
22 *Ibid.*

23     **a. Stewart's Course of Treatment was not Medically**
24 **Unacceptable Under the Circumstances from an Objective Standpoint**

25     The objective element of deliberate indifference is a higher standard
26 than mere medical malpractice. *Estelle* at 105-106 ["[A] complaint that a
27 physician has been negligent in diagnosing or treating a medical condition
28 does not state a valid claim of medical mistreatment under the Eighth

Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"]. "A difference of opinion does not amount to deliberate indifference to serious medical needs required for liability under section 1983." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "To prevail under these principles, [a plaintiff] must show that the course of treatment the doctors chose was **medically unacceptable under the circumstances** [Citations]" Id. at 495, quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (emphasis added). Edmo v. Corizon, Inc., 949 F.3d 489, 495 (9th Cir. 2020).

Here, the facts do not demonstrate that what Stewart did was medically unacceptable. Defendant's retained liability expert, Richard Hayward, Ph.D. opined that Stewart's conduct met the standard of care, meaning it was acceptable under the circumstances. (Exh. "K".).

As set forth above, Stewart's impression was "F29 unspecified psychosis r/o substance-induced psychosis" (Exhibit "I"). Plaintiffs' liability expert, Bonny Forrest, Ph.D., opines that Stewart "failed to rule out a medical condition as a cause of Ms. Garot's behavioral issues" (Exh. "L"). Otherwise stated, Forrest is critical of Stewart's diagnosis, opining that he should have reached a different diagnosis, one where he should have said rule out medical-induced psychosis.

However, Forrest never opines that Garot's behavior issues were, in fact, due to a skull fracture and brain bleed. Nor does she ever opine that Garot's behavior issues were not due to a substance-induced psychosis, such as acute alcohol withdrawal (she never addresses this point, period). Garot could have had both conditions operating simultaneously (Forrest does not opine otherwise). Therefore, Forrest can neither say Stewart's diagnosis was wrong or unreasonably derived or that it was medically unacceptable (as per *Farmer*, above). Stewart's liability expert, Richard Hayward, Ph.D. opined

that Stewart's diagnosis was reasonably derived:

> "Dr. Stewart performed a very competent psychological evaluation under unusually difficult conditions. Because Ms. Garot was housed in a safety cell he was required to complete the evaluation through the food port. This limited Dr. Stewart's ability to obtain any benefit from observing her facial expressions as she responded to his questions. He additionally was limited by Ms. Garot's altered mental status that included confusion and probable visual hallucinations. She was unable to provide any substantial details regarding her history of alcohol and drug use. It is likely that she was withdrawing from alcohol and/or drugs and many of her symptoms were consistent with the initial onset of delirium tremens from alcohol withdrawal. Despite the difficulties of completing a psychological evaluation with the constraints of the safety cell and her altered mental status, Dr. Stewart was able to obtain sufficient information to make a diagnosis of Unspecified Psychotic Disorder with a rule out of substance-induced psychosis." (Exh. "K").

Hayward noted, "The Medical Intake Screening form documents that she acknowledged drinking vodka the morning prior to her arrest. Drinking vodka in the morning is rare for moderate and social drinkers and suggests that she was a heavy drinker." (Exhibit "K"). Hayward also noted, "Ms. Garot has a history of alcohol abuse/dependence. She was at Aurora Detox (inpatient) in summer 2015 and previously participated in a rehabilitation program at Lasting Recovery. She relapsed in January 2016 following a relationship breakup. She was admitted to Alvarado Parkway Institute but left after a few days. In May 2016 she was seen in the emergency department with a blood alcohol level in the 300s. In July 2016 she was again seen in the emergency department for acute alcohol intoxication. In

August 2016 she was admitted with an alcohol level of 475. She was reported to be in alcohol withdrawal in the setting of chronic alcoholism. She has a history of delirium tremens and has had mild alcoholic hepatitis as well as hepatic steatosis (fatty liver)" (Exhibit "K").

Plaintiff's Internal Medicine expert, Homer Venters, M.D., admitted in his deposition that when Stewart saw Garot her behavior could have been due either to a head trauma, or to alcohol withdrawal:

"…AT THE TIME OF ON OR ABOUT THE VISIT BY DR. TRAN, APRIL 14, AND THE VISIT WITH DR. STEWART, APRIL 15, DID IT APPEAR TO YOU IN YOUR OWN ESTIMATION THAT COLLEEN GAROT WAS LIKELY HAVING AND SHOWING SIGNS AND SYMPTOMS OF ALCOHOL WITHDRAWAL?

MR. IREDALE: FORGIVE ME. I OBJECT TO THE COMPOUND NATURE OF THE QUESTION.

DOCTOR, IF YOU UNDERSTAND IT, YOU MAY ANSWER.

THE WITNESS: MY CONCERN WOULD BE THAT AT THIS TIME SHE MAY HAVE BEEN EXHIBITING SIGNS AND SYMPTOMS OF A HEAD TRAUMA THAT WAS CAUSING SOME INTRACRANIAL CHANGES AND ALSO THAT THERE COULD HAVE BEEN A COMPONENT OF ALCOHOL WITHDRAWAL ALSO OCCURRING" (Exhibit "M").

Accordingly, Plaintiffs have failed to show that Stewart's diagnosis was **medically unacceptable** under the objective circumstances (as per Farmer).

Additionally, even if Plaintiffs were able to show that Stewart's diagnosis was wrong, "a physician and surgeon is not required to make a perfect diagnosis but is only required to have that degree of skill and

learning ordinarily possessed by physicians of good standing practicing in the same locality…" Ries v. Reinard (1941) 47 Cal.App.2d 116 119, 117 P.2d 386.   Stated another way, "mere error of judgment, in the absence of a want of reasonable care and skill in the application of his medical learning to the case presented, will not render a doctor responsible for untoward consequences in the treatment of his patient ( Hesler v. California Hospital Co., 178 Cal. 764, 766-767 [174 P. 654]; Perkins v. Trueblood, 180 Cal. 437, 441 [181 P. 642]; Jensen v. Findley, 17 Cal.App.2d 536, 543 [62 P.2d 430]), for a doctor is not a "warrantor of cures" [**41] (Johnson v. Clarke, 98 Cal.App. 358, 361 [276 P. 1052]) or "required to guarantee results" ( Adams v. Boyce, 37 Cal.App.2d 541, [***16] 549 [99 P.2d 1044]; also Markart v. Zeimer, 67 Cal.App. 363, 371 [227 P. 683]; Rising v. Veatch, 117 Cal.App. 404, 409 [3 P.2d 1023]; Beni v. Abrons, 130 Cal.App. 206, 211 [19 P.2d 523]; Sansom v. Ross-Loos Medical Group, 57 Cal.App.2d 549, 552-553 [134 P.2d 927])."   Huffman v. Lindquist (1951) 37 Cal. 2d 465, 475, 234 P.2d 34.

**b. Stewart Did Not Have a Subjectively Culpable State of Mind to Support the Claim**

The subjective element under the Eighth Amendment "isolates those who inflict punishment" when they " 'consciously disregard' a substantial risk of serious harm." Farmer at 839. The plaintiff must prove that the "chosen course of treatment was the doing of **a criminally reckless – or worse – state of mind**." Edmo v. Corizon, Inc., 949 F.3d 489, 494 (9th Cir. 2020), citing Farmer at 839 (emphasis added). "[A] deliberately indifferent state of mind may be inferred when 'the course of treatment the doctors chose was medically unacceptable under the circumstances' **and 'they chose this course in conscious disregard of an excessive risk to plaintiff's health.'** " Id. at 495, quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th

Cir. 1996) (emphasis added).

Plaintiffs' liability expert Forrest concluded that "Dr. Stewart appears to have just <u>assumed</u> (e.g., because of unconscious bias, inexperience, or lack of good care), that Ms. Garot's behavior was more likely the result of her being a substance abuser" (Exh. L; emphasis added).  This is not the same as stating that he acted in <u>conscious disregard</u> of her medical state. Nowhere do Plaintiffs introduce any evidence or argument that Stewart's plan for "f/up in 1 day" (Exh. "I") by mental health service put her in grave danger or excessive risk as to her *medical* condition.  He did not act in place of a medical examiner.  He did not supplant any medical examiner.  He did not devise a plan for medical follow up.  The medical examiners, in fact, did not think her black eye qualified as a *medical emergency*.  Stewart did not see a *psychiatric emergency*.  Forrest never opines a psychiatric emergency existed.  Garot did not go on to attempt suicide.

Therefore, there is no evidence that Stewart acted with subjective, conscious disregard of an excessive risk to Plaintiff's health.  This cause of action fails.

### c. Plaintiffs Are Not Entitled to Punitive Damages

A plaintiff is entitled to punitive damages in a Section 1983 claim "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves the reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Punitive damages can also be awarded if a defendant's conduct, which harmed the plaintiff, is malicious, oppressive or in reckless disregard to the plaintiff's rights. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). Conduct is oppressive "if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some

weakness or disability or the misfortunes of another person." *Id.* at 809. Punitive damages are awarded " 'to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future.' [Citation.]" *Smith v. Wade*, at 54. Punitive damages are "proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice[.]" Civ. Code § 3294(a).

"A section 1983 punitive damages claim is subject to summary adjudication 'where plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of defendant's actions.' *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999)." *Megargee v. Wittman*, 550 F.Supp.2d 1190, 1214 (E.D. Cal. 2008).

As demonstrated here, above, Stewart did not act with the requisite mind set for punitive damages. He was asked to perform a limited suicide risk assessment. He found her not to be suicidal. As to her behavior, he reasonably arrived at a diagnosis of unspecified psychosis, rule out substance-induced psychosis, Garot potentially going through acute alcohol withdrawal. His actions were not callous nor in reckless  disregard of Garot's healthcare needs.

**B. Plaintiffs' Third Cause of Action for Professional Negligence Fails as a Matter of Law**

Plaintiffs' Third Cause of Action is for Professional Negligence.  The elements for professional negligence of a health care provider are (1) a duty of care owed by a health care provider, (2) a breach of that duty, (3) a causal connection between the alleged negligence (breach) and the claimed injury, and (4) actual damage as a result. *Hanson v. Grode*, 76 Cal.App.4th 601, 606 (1997).  Expert opinion is required to prove a case for California medical malpractice. *Hutchinson v. United States*, 838 F.2d 390, 392-93 (9th Cir.

21

DEFENDANTS MICHAEL STEWART AND LIBERTY HEALTHCARE OF CALIFORNIA, INC.'S NOTICE OF MOTION /MOTION FOR SUMMARY JUDGMENT, OR FOR PARTIAL SUMMARY JUDGMENT

1988).

For the reasons already analyzed above, the claim for breach of the standard of care fails as a matter of law against Stewart: (1) Stewart was called to perform a limited and focused suicide risk assessment of Garot (who was behind a closed/locked door in a safety cell); (2) Stewart was not performing a medical examination as to her black eye; (3) Stewart found her to be a low risk of suicide; (4) Garot was cleared from the safety cell and put in EOH housing; (4) Garot did not go on to attempt in-custody suicide; (5) Stewart did not supplant any of the medical examiners who were already following Plaintiff for her black eye; (6) Plaintiffs' Internal Medicine expert witness Venters confirms that Stewart could reasonably have attributed Garot's behavior to alcohol withdrawal syndrome. No amount of hyperbolic and conclusionary statements of malpractice by Forrest changes this.

## C. Plaintiffs' Claim Against Liberty Healthcare Corporation Fails as a Matter of Law

Plaintiffs' sole allegation against Liberty Healthcare Corporation ("LHC") is that it is vicariously liable for Dr. Stewart.

### 1. LHC Is Not Vicariously Liable if Stewart is not found liable

A principle or employer is only vicariously liable for its agents or employees. *Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959-60. An employer cannot be held vicariously liable if the employee is not found liable. *Lathrop v. Healthcare Partners Medical Group*, 114 Cal.App.4th 1412, 1426 (2004).

### 2. LHC May Be Dismissed If the Claims Against Stewart Are Dismissed

LHC does not dispute that it is vicariously liable for Stewart as it pertains to this case. LHC will not be vicariously liable for any damages

pertaining to him if the claims against him are summarily adjudicated. *Lathrop.*

### 3. Plaintiffs' Claim for Punitive Damages Fails

*Civil Code* § 3294(b) prohibits employer liability for punitive damages of an employee "unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice."

Here, there is not any evidence that LHC had any advance knowledge of alleged unfitness of Stewart. There is not any evidence that LHC authorized or ratified his conduct. Stewart relied on his training, education, and experience in his provision of care with Garot which insulates LHC from punitive damages since it was not personally guilty of oppression, fraud, or malice regarding Garot's care.

Therefore, the Court should dismiss the punitive damages claim.

### D.    Plaintiffs' Fourth Cause of Action for Failure to Summon Medical Care Fails as a Matter of Law

Plaintiffs' Fourth Cause of Action is for Failure to Summon Medical Care (California Government Code § 845.6). Plaintiffs' claim is subject to summary judgment/adjudication, because the uncontroverted evidence shows that Stewart timely performed a suicide risk assessment and acted reasonably in so doing. Section 845.6 provides, in pertinent part, the following:

"Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, … a public employee, and the public entity where the employee is acting within the scope of

his employment, is liable if the employee knows or has reason to
know that the prisoner is in need of immediate medical care and he
fails to take reasonable action to summon such medical care."

In order for Plaintiffs to state a claim under this statute, "they must
present competent, admissible evidence that: (1) the public employee knew
or had reason to know of the need (2) for immediate medical care, and (3)
failed to reasonably summon such care. [Citations omitted.]" Horton by
Horton v. City of Santa Maria, 915 F.3d 592, 608 (9th Cir. 2019). This
section does not impose a duty to monitor the quality of care provided. Ibid.
at 606. Rather, under this standard, a person is liable for denying a prisoner
needed medical care only if the person "knows of and disregards an
excessive risk to inmate health and safety." Farmer v. Brennan, 511 U.S.
825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In this case, there is no evidence that psychologist Stewart knew of
and disregarded a serious medical condition (head injury).  The black eye
was being evaluated by other medical professionals. Stewart's mental health
diagnosis of unspecified psychosis, rule out  substance-induced psychosis
*did not present a psychiatric emergency warranting any immediate
summoning of psychiatric care.*  Plaintiffs' experts do not opine that Stewart
knew either a medical or psychiatric emergency existed and elected not to
act.  This Cause of Action is nowhere supported.

///
///
///
///
///
///
///

## V.

## <u>CONCLUSION</u>

Defendant Stewart requests full or partial summary judgment against Plaintiffs.

DATED: August 23, 2022

ERICKSEN ARBUTHNOT

/s/ Mark L. Kiefer

By: _____
MARK L. KIEFER, ESQ.
ROYCE Y. HUANG, ESQ.
Attorneys for Defendants,
MICHAEL STEWART, PH.D. and LIBERTY
HEALTHCARE OF CALIFORNIA, INC. and
Cross-Claim Defendants MICHAEL
STEWART, PH.D. and LIBERTY
HEALTHCARE CORPORATION