**CARROLL, KELLY, TROTTER & FRANZEN**
**RICHARD D. CARROLL (SBN 116913)**
**N. BEN CRAMER (SBN 261767)**
**EDUARDO G. GONZALEZ (SBN 323255)**
**225 Broadway, Suite 1500**
**San Diego, CA 92101**
**Telephone No. (619) 814-5900 / Facsimile No. (619) 814-5999**
**rdcarroll@cktflaw.com; nbcramer@cktflaw.com; eggonzalez@cktflaw.com**
**Attorneys for Defendant, QUOC TRAN, M.D.**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS RAINEY and JUDY RAINEY, Co-Conservators, on behalf of COLLEEN GAROT, | CASE NO.:  19-cv-01650-H-AGS |
| Plaintiff, | **DEFENDANT QUOC TRAN, M.D.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| COUNTY OF SAN DIEGO, et al. | |
| Defendants. | **[NO ORAL ARGUMENT PURSUANT TO LOCAL RULES]** |
| ALL RELATED CROSS-CLAIMS | [COORDINATED WITH THE MSJ OF CROSS-DEFENDANT QUOC TRAN, M.D. AGAINST CROSS-CLAIMANT COUNTY OF SAN DIEGO] |
| | Judge: M. James Lorenz
Dept.: 5B
Date: October 21, 2022
Time: 2:00 pm |

**COMES NOW**, Defendant, QUOC TRAN, M.D. (hereinafter "Dr. Tran"), hereby submits this memorandum of points and authorities in support of his motion for summary judgment, or in the alternative, motion for partial summary judgment.

## **TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    A.    Plaintiff Garot's Criminal Conviction.  . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    Booking and Medical Intake On April 13, 2018. . . . . . . . . . . . . . . . . . .7

    C.    Examination of NP Dela Cruz On April 13, 2018... .. . . . . . . . . . . . . .... 8

    D.    Unwitnessed Fall and Examination on April 14, 2018. . . . . . . . . . . . .8

    E.    Examination by Quoc Tran, M.D. on April 14, 2018. . . . . . . . . . . . . ..9

    F.    Further Observation <u>After</u> Dr. Quoc Tran's Visit on April 14, 2018...10

    G.    No Further Treatment by Dr. Quoc Tran. . . . . . . . . . . . . . . . . . . . . . . . . . .10

    H.    Plaintiff's Condition and Treatment <u>After</u> Dr. Quoc Tran's Involvement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

LEGAL STANDARD FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    A.    Plaintiff's First Cause of Action for Deliberate Indifference to a Substantial Risk of Harm Fails as a Matter of Law.. . . . . . . . . . . . . . . .12

        1.    The Cause of Action Should Be Analyzed under the 8th Amendment, Not the 14th Amendment. . . . . . . . . . . . . . . . . . . 12

        2.    Dr. Tran Did Not Violate Garot's Eighth Amendment Rights .13

            a.    Dr. Quoc Tran's Medical Care and Treatment Was Not Medically Unacceptable Under the Circumstances from an Objective Standpoint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT

19-CV-01650-H-AGS

b.    Dr. Tran Did Not Have a Subjectively Culpable State of Mind to Support the Claim…..……………………. . ..15

c.    Plaintiffs Are Not Entitled to Punitive Damages.. . . . . . 16

B.    Plaintiffs' Third Cause of Action for Professional Negligence Fails as a Matter of Law……………………………………………………...17

1.    Plaintiff Cannot Establish that Dr. Tran Failed to Comply with the Standard of Care…………………………………………..18

2.    Plaintiff's Claim for Punitive Damages Fails…………………18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

19-CV-01650-H-AGS

# TABLE OF AUTHORITIES

Page(s)

Cases

1997 WL 303277 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bell v. Wolfish*,
   441 U.S. 520 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Corizon, Inc.*,
   949 F.3d 489 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Estate of Wilson v. County of San Diego*,
   2022 WL 789127 (S.D. Cal. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Estelle v. Gamble*,
   429 U.S. 97 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*Farmer v. Brennan*,
   511 U.S. 825 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*Flores v. City of Fresno*,
   2020 WL 4339825 (E.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gregg v. Georgia*,
   428 U.S. 153 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hanson v. Grode*,
   76 Cal.App.4th 601 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hutchinson v. United States*,
   838 F.2d 390 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jackson v. McIntosh*,
   90 F.3d 330 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jensen v. County of Los Angeles*,
   2017 WL 10574058 (C.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kyle v. Patterson*,
   196 F.3d 695 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Megargee v. Wittman*,
   550 F.Supp.2d 1190 (E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Newsome v. Higham*,
   2010 WL 1258013 (M.D. Ga. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nordenstrom v. Corizon Health, Inc.*,
   2021 WL 2546275 (D. Or. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4

*Rivers v. Reilly*,
    2020 WL 1330746 (E.D. Pa. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Sanchez v. Vild*,
    891 F.2d 240 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15
*Sandoval v. County of San Diego*,
    985 F.3d 657 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Smith v. Wade*,
    461 U.S. 30 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Statutes

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14
California *Vehicle Code* § 23152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rules

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Fed. R. Civ. P. 56(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT

19-CV-01650-H-AGS

1

## INTRODUCTION

2  This case involves the medical care and treatment provided to Plaintiff
3  Colleen Garot (hereinafter "Plaintiff") by multiple individuals, including Defendant
4  Quoc Tran, M.D, while she was incarcerated. In brief, on April 13, 2018, Plaintiff
5  was arrested and taken to jail due to an outstanding warrant. At the time of her arrest,
6  Plaintiff had an old-appearing black eye. On this date, Plaintiff was seen by several
7  individuals who all determined that she did not require any emergency medical
8  treatment and/or was medically stable. Sometime between the night of April 13,
9  2018 and early morning of April 14, 2018, Plaintiff allegedly had an unwitnessed
10  fall. On April 14, 2018, Defendant Dr. Tran examined Plaintiff. The examination by
11  Dr. Tran revealed that Plaintiff did <u>not</u> have any neurological deficits or objective
12  signs consistent with a subdural hematoma. The rest of the day, Plaintiff was
13  conscious, alert, and conversant. Dr. Tran did <u>not</u> see Plaintiff again after April 14,
14  2018. On April 16, 2018, Plaintiff was found on the floor having a seizure like event
15  and she was transferred to an outside hospital. At no time during Dr. Tran's visit, on
16  April 14, 2018, did Plaintiff exhibit any signs or symptoms of a medical emergency.
17  Plaintiff alleged a claim for medical malpractice against Dr. Tran. Given
18  Plaintiff's status as an inmate at the San Diego County jail, Plaintiff also alleged a
19  claim for deliberate indifference under the Eighth Amendment while ignoring the
20  heightened proof required to establish it. As further illustrated below, Dr. Tran was
21  not negligent and not deliberately indifferent.

22

## STATEMENT OF FACTS

23

### A. Plaintiff Colleen Garot's Criminal Conviction

24  On May 5, 2016, Plaintiff was arrested for violation of California *Vehicle*
25  *Code* § 23152, driving under the influence of alcohol ("DUI"). (Exh. A.) Plaintiff
26  was ultimately charged with three criminal counts related to this DUI on September
27  13, 2017. (Exh. B.) On October 17, 2017, Plaintiff plead guilty to this first charge.

28

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT              19-CV-01650-H-AGS

(Exh. C.) On December 1, 2017, the state court ordered Plaintiff into the multiple conviction program for criminals with more than one DUI conviction ("DUIP") as part of her sentence. (Exh. D.) In its post-sentence minutes on January 18, 2018, the state court noted that Plaintiff was on probation. (Exh. H.) The state court ordered Plaintiff to report to the San Diego County Jail for confinement beginning at 8:00 a.m. on January 30, 2018 as part of her sentence. (Exh. E.) Plaintiff failed to report and therefore failed to comply with her sentence. (*Ibid.*) On February 22, 2018, the state court summarily revoked Plaintiff's probation due to Plaintiff's failure to comply with the court order of self-surrendering to the San Diego County Jail for 96 hours and issued a bench warrant without bail. (Exh. F.)

**B. Booking and Medical Intake On April 13, 2018**

On April 13, 2018, while serving Plaintiff with an unrelated Court Ordered Eviction, Sheriff Deputies discovered the bench warrant based on her previous DUI conviction. (Exh. G.) As a result of the warrant, Deputies detained Plaintiff and transported her to Vista Detention Facility ("VDF") where she was booked. (*Ibid.*)

Plaintiff was evaluated at medical intake by County Nurse Yaowaluck Hagg during booking. (Exh. I.) Plaintiff reported that she had not been injured, hurt, or in an accident in the last 72 hours. (*Ibid.*) She had a bruise on her left eye. (*Ibid.*) She was alert and oriented. (*Ibid.*) She was ambulatory. (*Ibid.*) She was not lethargic or stuporous. (*Ibid.*) She had mild alcohol breath. (*Ibid.*) Plaintiff reported that the last time she used alcohol was "this a.m." (*Ibid.*) Nurse Hagg documented that Plaintiff had "slurred speech due to ETOH (alcohol) consumption this a.m." (*Ibid.*) She had a normal thought process and demonstrated cooperative behavior. (*Ibid.*) Plaintiff denied any visual or auditory hallucinations. (*Ibid.*) She denied feeling suicidal. (*Ibid.*) Plaintiff reported that she had a history of a neurological disorder and depression. She reported she was taking Lexapro and Seroquel. (*Ibid.*)

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT

19-CV-01650-H-AGS

1  At approximately 11:22 a.m., Nurse Hagg documented Plaintiff "claims a
2  diagnosis of Hashimoto disease. Bruise on left eye, denies left eye injury but says it
3  is from her neurological disorder. Abrasion and redness on forehead from fall five
4  days ago." She ordered Plaintiff be evaluated. (Exh. J)

5  **C.   Examination by NP Dela Cruz On April 13, 2018**

6  On April 13, 2018, at approximately 10:20 p.m., Nurse practitioner Angelito
7  Dela Cruz performed a nurse practitioner sick call evaluation of Plaintiff. (*Ibid*.)
8  Plaintiff reported having a history of vertigo for which she was taking Seroquel.
9  (*Ibid*.) On examination, Plaintiff was conversant and alert. (*Ibid*.) She was in no
10 acute distress. (*Ibid*.) She was noted to have ecchymosis to forehead and left
11 periorbital. (*Ibid*.) Plaintiff reported that the bruise around her left eye and forehead
12 were from her husband. (*Ibid*.) Her pupils were equal, round and reactive to light.
13 (*Ibid*.)  Her extraocular movements were intact with no limitation or pain. (*Ibid*.)
14 She could move all her extremities. (*Ibid*.) Plaintiff's neurological examination
15 revealed that she was "grossly intact" and "ambulating well." (*Ibid.*)

16 **D. Unwitnessed Fall and Examination on April 14, 2018**

17 On April 14, 2018, at approximately 7:00 a.m., Sheriff Edna Gomez-Sanchez
18 found Plaintiff on the floor during the first security check. (Exh. K.) When she asked
19 Plaintiff what happened, she responded that she fell off her bunk and hit her head.
20 (*Ibid*.) When asked, Plaintiff responded that she could move. (*Ibid*.) Sheriff Gomez-
21 Sanchez checked Plaintiff's head and felt a lump. (*Ibid*.) Sheriff Gomez-Sanchez
22 informed Plaintiff that she was going escort her to medical when she completed her
23 security check. (*Ibid*.) Upon completion of the security check, Sheriff Gomez-
24 Sanchez returned to Plaintiff's cell where she found her waiting for her. (*Ibid*.) She
25 asked Plaintiff if she needed a wheelchair or if she could walk to medical and
26 Plaintiff responded that she could walk with her help. (*Ibid*.) Sheriff Gomez-Sanchez
27 helped Plaintiff walk to the medical offices. (*Ibid*.) When asked, Plaintiff reported

28

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION                    19-CV-01650-H-AGS
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT

that she was shaky because she needed her medication which helps her stop shaking. (*Ibid.*)

At approximately 7:17 a.m., Plaintiff was examined by Nurse Susan Anguitay. (Exh. L.) Plaintiff reported that she fell on her face. (*Ibid.*) On examination, she was alert and oriented, calm, cooperative, verbally responsive, and had clear speech. (*Ibid.*) She was in no acute distress. (*Ibid.*) She was ambulatory with ataxic gait. (*Ibid.*) In her note, Nurse Anguitay documented, in part, the following – "… stated sustained injury 5 days ago, with raccoon left eye, dry abrasion forehead; noted bump back of head from this recent fall; stated 'kinda I loss consciousness when I fell.'" (*Ibid.*) Plaintiff was given an ice pack. Nurse Anguitay added Plaintiff to "medical doctor sick call" for further evaluation. (*Ibid.*)

**E. Examination by Quoc Tran, M.D. on April 14, 2018**

On April 14, 2018, at approximately 11:23 a.m., Dr. Quoc Tran examined Plaintiff. (Exh. M.) In his note, he noted that she complained of "chronic unsteady gait, tremors, and unable to see specialist." *(Ibid.)* On exam, Dr. Tran noted Plaintiff had multiple bruises on her face and left periorbital swelling. (*Ibid.*) Dr. Tran performed a neurological examination on Plaintiff. (*Ibid*; see also Exh. N at 70:11-72:4.) Given Plaintiff's periorbital swelling and bruises, Dr. Tran would have looked at Plaintiff's entire body to assess whether she has any asymmetries, abnormalities with ambulation, and/or abnormalities with movement of her extremities that would indicate the presence of a neurological issue. (Exh. N at 72:16-24.) He would have also walked around the patient, examined her entire head, and looked for battle signs behind the ear. (Exh. N at 72:25-53:6.) Dr. Tran documented that Plaintiff's anterior structures in both eyes were intact. (Exh. M.) Dr. Tran's documented assessment and plan was "unsteady gait, due to drug / etoh withdraw?; lower bunk / tier; continue to monitor; and if unsafe for housing, might have to be transferred to Las Colinas or Med Iso cell." (*Ibid.*) In his deposition, Dr. Tran clarified that he did not notice

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT

19-CV-01650-H-AGS

Plaintiff having any tremors, but rather, it is what she reported. (Exh. N at 69:6-14.) He further clarified that he did not observe Plaintiff exhibiting an unsteady gait. (Exh. N at 74:23-75:14.) Given Plaintiff's fall, Dr. Tran's plan included close monitoring, placing her in a lower bunk/tier, and consideration of transfer. (Exh. N at 76:3-15.) Dr. Tran did not believe it was clinically indicated to order to send Plaintiff to the emergency department for further examination at the time of his exam. (Exh. N at 77:15-24.) He believed that she was medically stable and had did not have an altered mental status. (Exh. N at 78:14-23.)

**F. Further Observation _After_ Dr. Quoc Tran's Visit on April 14, 2018**

After Dr. Tran's visit, Plaintiff underwent further observation. In her report, Sheriff Edna Gomez-Sanchez documented the following: "The remaining of the day I saw Garot sitting in the day room at times talking to other inmates. Sleeping in her cell. Garot had lunch and dinner in the dayroom. I had frequent conversations with Garot throughout the day. Garot continued to be shaky, but was conscious and alert the remaining of the day. After my shift ended I had no further contact with Garot." (Exh. K.)

**G. No Further Treatment by Dr. Quoc Tran**

Dr. Tran did not participate in Plaintiff's treatment again after his only evaluation on April 14, 2018. After Dr. Tran's visit, Plaintiff was conscious, alert, and conversant. (Exh. K.)

**H. Plaintiff's Condition and Treatment _After_ Dr. Quoc Tran's Involvement**

On April 15, 2018, Plaintiff was evaluated by psychologist Michael Stewart, Ph.D. after she was moved to a safety cell due to making a statement about hurting herself. (Exh. O.) After the evaluation, Plaintiff was transferred to LCDRF ("Las Colinas") to "EOH" (enhanced observation housing) that night and scheduled to be re-evaluated by a mental health provider on April 16, 2018. (Exhs. O, P.)

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT     19-CV-01650-H-AGS

On April 16, 2018, Plaintiff was found seizing in her cell. 911 was activated and Plaintiff was transferred to the hospital. (Exh. Q.) While hospitalized, Plaintiff underwent a CT scan of her head at 12:31 p.m. which showed a left-sided subdural hematoma. (Exh. R.)

## LEGAL STANDARD FOR SUMMARY JUDGMENT

This Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to show that there is no triable factual issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the burden shifts to the non-moving party to show that there is a genuine factual issue for trial. *Id.* at 324. The Court may grant summary judgment on all relief requested or may grant partial summary judgment as to those claims which can be summarily adjudicated. Fed. R. Civ. P. 56(g).

## ARGUMENT

**A.    Plaintiff's First Cause of Action for Deliberate Indifference to a Substantial Risk of Harm Fails as a Matter of Law**

Plaintiff claims deliberate indifference to a substantial risk of harm against Dr. Tran. via 42 U.S.C. § 1983. (Dkt. No. 53 at 11-15.)

### 1.    The Cause of Action Should Be Analyzed under the 8th Amendment, Not the 14th Amendment

The Ninth Circuit in *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) explained which constitutional framework to use in the deliberate indifference to serious medical needs analysis as follows: Individuals in state custody have a constitutional right to medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). For inmates serving custodial sentences following a criminal conviction, that right is part of the Eighth Amendment's guarantee against cruel and unusual punishment. *Id.* However, pretrial detainees have not yet been convicted of

a crime and therefore are not subject to punishment by the state. Accordingly, their rights arise under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535-36, 535 n.16.

Detentions *because of* a person's conviction are analyzed under the Eighth Amendment. In an unpublished Ninth Circuit decision, *Flores v. Mesenbourg*, 116 F.3d 483, No. 95 17241, 1997 WL 303277 (9th Cir. 1997), the Ninth Circuit "[had] little difficulty concluding that the Eighth Amendment provide[d] the proper standard" of analysis of a person who was incarcerated because of a parole violation "because he had originally been convicted and given the sentence which was moderated by parole. His original conviction [was] the authority under which he was confined after his parole violation." *Ibid.* Similarly, the Central District of California applied the Eighth Amendment analysis to a person detained for a parole violation, *Jensen v. County of Los Angeles*, 2017 WL 10574058, at *7 (C.D. Cal. 2017), as did the Eastern District of California, *Flores v. City of Fresno*, 2020 WL 4339825 (E.D. Cal. 2020). Another district in the Ninth Circuit found that a person detained due to a parole violation would be analyzed under the Eighth Amendment because the conviction "supplied the basis for his punishment[.]" *Nordenstrom v. Corizon Health, Inc.*, 2021 WL 2546275 (D. Or. 2021). Other districts in other circuits have applied the Eighth Amendment analysis under similar post-conviction detentions. *Newsome v. Higham*, 2010 WL 1258013, at *2 (M.D. Ga. 2010) [detained due to a probation violation]; *Rivers v. Reilly*, 2020 WL 1330746, at *4 (E.D. Pa. 2020). [person detained due to a probation violation]. Earlier this year, after analyzing much of the above case law, this Court held that detentions due to violation of parole, probation, or postrelease supervision are analyzed under the Eighth Amendment. *Estate of Wilson v. County of San Diego*, 2022 WL 789127 (S.D. Cal. 2022), 3:20-cv-00457-BAS-DEB Dkt. No. 62 at 24-28.

Here, Plaintiff would not have been detained and placed in jail but for her DUI

conviction. Plaintiff was on probation to complete the DUI program. But, Plaintiff did not complete the DUI program since she failed to report to a self-surrender 96-hour confinement. As a direct result of this violation, Plaintiff's probation was revoked and a warrant issued to detain her and take her to jail, which is what happened. Plaintiff was in jail beginning April 13, 2018 *because of* her DUI conviction and subsequent probation violation and revocation. Therefore, the Eighth Amendment applies.

### 2. Dr. Tran Did Not Violate Garot's Eighth Amendment Rights

The Eighth Amendment prohibits punishment which constitutes the "unnecessary and wanton infliction of pain[.]" *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("*Estelle*"), quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. *Ibid.*, without supplemental quotation. A party is deliberately indifferent under the Eighth Amendment as follows:

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," [Citation.]; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities[.]" [Citation.] [...]
>
> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." [Citation.] To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." [Citation.]

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("*Farmer*"). A plaintiff must prove both objective and subjective elements to state a claim. *Ibid.*

### a. Dr. Quoc Tran's Medical Care and Treatment Was Not Medically Unacceptable Under the Circumstances from an Objective Standpoint

The objective element of deliberate indifference is a higher standard than

13

mere medical malpractice. *Estelle* at 105-106 ["[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"]. "A difference of opinion does not amount to [] deliberate indifference to [] serious medical needs required for liability under section 1983." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "To prevail under these principles, [a plaintiff] must show that the course of treatment the doctors chose was medically unacceptable under the circumstances [Citations], and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Ibid.* "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer* at 844.

Here, the facts do not demonstrate that what Dr. Tran did was medically unacceptable. Defendant Dr. Tran's retained expert, Dr. Regina Wang, opined that Dr. Tran's medical care and treatment was reasonable and with the standard of care meaning it was medically acceptable under the circumstances. (Exh. S.) Plaintiff's liability expert, Dr. Homer Venters does <u>not</u> criticize Dr. Tran for not making the diagnosis of a subdural hematoma. Rather, Dr. Venter's criticisms are that 1.) Dr. Tran did not order an "alcohol withdrawal protocol" and 2.) Dr. Tran did not request a "higher level of care." As to the first criticism, Dr. Venters admitted in deposition that he is not familiar with the sheriff department's criteria for when an inmate should be put on alcohol withdraw protocol. (Exh. T.) If Plaintiff's own expert does not know the criteria for when an inmate should be on alcohol withdrawal protocol, and therefore whether or not Plaintiff met the criteria, then it follows that Plaintiff's expert cannot establish whether or not Dr. Tran acted medically unacceptable by not initiating the protocol.

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

19-CV-01650-H-AGS

As it relates to Dr. Venters' second criticism, Defendant Dr. Tran's expert opined that the standard of care did not require Dr. Tran to have a high degree of suspicion that Plaintiff had an underlying medical emergency that would require a transfer to a higher level of care. (Exh. S.) In support of this criticism, Dr. Venters makes generalizations that Plaintiff's condition was worsening without any actual concrete support that Plaintiff's condition had actually deteriorated at the time that Plaintiff was seen by Dr. Tran. In an attempt to support his position, Dr. Venters opined, in his Rule 26 Report, that an indicator of clinical deterioration occurred when Plaintiff fell while in jail and reported unsteady gait, tremors, and a loss of consciousness. (Exh. U.) Yet, Dr. Venters cannot point to any evidence that that the fall actually occurred. Assuming it occurred, Dr. Venters does not offer any evidence which links the fall to any medical condition she may have had. Further, as illustrated above, Dr. Tran clarified in his deposition that he did not observe Plaintiff to have an unsteady gait or tremors. Lastly, Dr. Venters cannot point to any evidence that Plaintiff actually loss consciousness during the alleged fall. As such, the basis for Dr. Venters' opinions that Plaintiff deteriorated and should have received a "higher level of care" are factually incorrect and/or not supported by the evidence.

Based on the aforementioned, Plaintiff cannot present a prima facie case that Dr. Tran was objectively indifferent. If Dr. Venters believes that Dr. Tran could have done more, then this would be a question of medical malpractice, which does not rise to the level of deliberate indifference.

### b.   Dr. Quoc Tran Did Not Have a Subjectively Culpable State of Mind to Support the Claim

The subjective element under the Eighth Amendment "isolates those who inflict punishment" when they "'consciously disregard' a substantial risk of serious harm." *Farmer* at 839. The plaintiff must prove that the "chosen course of treatment was the doing of a criminally reckless – or worse – state of mind." *Edmo*

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT

19-CV-01650-H-AGS

*v. Corizon, Inc.,* 949 F.3d 489, 494 (9th Cir. 2020), citing *Farmer* at 839. "[A] deliberately indifferent state of mind may be inferred when 'the course of treatment the doctors chose was medically unacceptable under the circumstances' and 'they chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Id.* at 495, quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Here, the facts do not demonstrate that Dr. Tran acted in conscious disregard to Plaintiff. Defendant's retained liability expert, Dr. Regina Wang, opined that Dr. Tran's medical care and treatment was reasonable and within the standard of care, meaning it was medical acceptable under the circumstances. (Exh. S.) As illustrated above, Dr. Tran performed a thorough evaluation and assessment of Plaintiff. In his deposition, Dr. Tran thoroughly described what he did / would have done for Plaintiff based on his custom and practice. After his evaluation, Dr. Tran's plan included, but was not limited to, close monitoring and ordering a lower bunk/tier for Plaintiff. Dr. Tran's evaluation and plan clearly demonstrates that Dr. Tran consciously addressed Plaintiff's clinical presentation and wanted ongoing monitoring. This is the opposite of a criminally reckless state of mind regarding Plaintiff's medical condition. Like many of the county staff, medical providers, and other individuals who examined Plaintiff before and after Dr. Tran, Dr. Tran did not believe that Plaintiff was suffering from a medical emergency, meaning that Dr. Tran did not consciously disregard an excessive risk to Plaintiff's health. Based on the aforementioned, Dr. Tran did not have the subjectively culpable state of mind.

### c.    Plaintiff is Not Entitled to Punitive Damages

A plaintiff is entitled to punitive damages in a Section 1983 claim "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves the reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Punitive damages can also be

DEFENDANT QUOC TRAN, M.D.'S MEMO OF P&A'S ISO MOTION
FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT

19-CV-01650-H-AGS

awarded if a defendant's conduct, which harmed the plaintiff, is malicious, oppressive or in reckless disregard to the plaintiff's rights. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). Conduct is oppressive "if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person." *Id.* at 809. Punitive damages are awarded "'to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future.' [Citation.]" *Smith v. Wade*, at 54.

"A section 1983 punitive damages claim is subject to summary adjudication 'where plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of defendant's actions.' *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999)." *Megargee v. Wittman*, 550 F.Supp.2d 1190, 1214 (E.D. Cal. 2008).

As illustrated above, Dr. Tran did not act with the requisite mind set for punitive damages because he evaluated Plaintiff by performing a neurological assessment and set forth a plan of treatment based on his evaluation. Dr. Tran's care and treatment of Plaintiff shows that he did not have some type of evil motive or intent. It further shows that he was not callous or that he recklessly disregarded Plaintiff's medical condition.

## B. Plaintiffs' Third Cause of Action for Professional Negligence Fails as a Matter of Law

The elements for professional negligence of a health care provider are (1) a duty of care owed by a health care provider, (2) a breach of that duty, (3) a causal connection between the alleged negligence (breach) and the claimed injury, and (4)

actual damage as a result. *Hanson v. Grode*, 76 Cal.App.4th 601, 606 (1997).  Expert opinion is required to prove a case for California medical malpractice. *Hutchinson v. United States*, 838 F.2d 390, 392-93 (9th Cir. 1988).

### 1.    Plaintiff Cannot Establish that Dr. Tran Failed to Comply with The Standard of Care

Plaintiff's claims regarding breaches of the standard of care are the same critiques made by their expert, Dr. Venters, regarding deliberate indifference. For the reasons analyzes above, the theories for breaches of the standard of care fail as a matter of law to establish a prima facie case against Dr. Tran.

### 2.    Plaintiff's Claim for Punitive Damages Fails

Punitive damages are "proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice[.]" *Civ. Code* § 3294(a). For the reasons detailed above, Dr. Tran did not act with oppression, fraud, or malice.

### <u>CONCLUSION</u>

Defendant, Dr. Quoc Tran, requests full or partial summary judgment against Plaintiff.

DATED:  September 2, 2022               CARROLL, KELLY, TROTTER & FRANZEN

By: */S/ Eduardo G. Gonzalez*
    RICHARD D. CARROLL
    N. BEN CRAMER
    EDUARDO G. GONZALEZ
    Attorneys for Defendant,
    QUOC TRAN, M.D.