| | |
|---|---|
| Steve Hoffman (SBN 237466)<br>Law Office of Steve Hoffman<br>180 Broadway, Ste. 1810<br>San Diego, CA 92101<br>Tel: 619.677.3015/Fax: 888.320.9384<br>shoffmanlaw@gmail.com | Eugene Iredale (SBN 75292)<br>Julia Yoo (SBN 231163)<br>Grace Jun (SBN 287973)<br>IREDALE & YOO, APC<br>105 West F Street, Fourth Floor<br>San Diego, CA 92101-6036<br>TEL: (619) 233-1525 / FAX: (619) 233-3221 |

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS RAINEY and JUDY RAINEY, Co-Conservators, on behalf of COLLEEN GAROT<br><br>              Plaintiff,<br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM D. GORE, in his official capacity; STEVEN BLOCK, ARTHUR DOHERTY, QUOC TRAN, M.D.; MICHAEL STEWART, PH.D.; FRIEDRIKE VON LINTIG, M.D.; ANGELITO DELA CRUZ,; YAOWALUCK HAGG; SUSAN CONRAD; MYRA RADA-GRAGASIN; CHRISTINE ESER; M. GERMONO; MELISSA GRANT; MABEL DOMINGO; MA ESTAVILLO; EDNA GOMEZ-SANCHEZ; HELEN SALTER; COAST CORRECTIONAL MEDICAL GROUP, P.C.; LIBERTY HEALTHCARE OF CALIFORNIA, INC., a professional corporation<br><br>              Defendants.<br><br>AND ALL RELATED CROSS-COMPLAINTS | NO. 19-CV-1650-L-AGS<br><br>***EX PARTE*** **PETITION FOR ORDER APPROVING SETTLEMENT INVOLVING INCOMPETENT ADULT AND FOR DISTRIBUTION OF SETTLEMENT FUNDS**<br><br>**[S.D. Local Rule 17.1]** |

Petitioner COLLEEN GAROT, an incompetent adult, through THOMAS RAINEY and JUDY RAINEY, co-conservators, and their attorneys of record hereby submit the following Petition and Order For Approving Settlement Involving an Incompetent Adult and Distribution of Settlement Funds.

## I.

## PARTIES AND CLAIMANTS

This action is brought by Plaintiff Colleen Garot, an incompetent female adult, age 50, date of birth is August 1, 1972. The action is brought by and through her co-conservators, Thomas Rainey, father of Colleen Garot, and Judy Rainey, stepmother of Colleen Garot, who were appointed co-conservators of her by order of the Hon. Robert Longstreth, Judge of the Superior Court of California, County of San Diego, on April 25, 2019, evidenced by Letters of Conservatorship filed on April 30, 2019, and attached hereto as Exhibit 1. Attorneys for Plaintiff and the co-conservators are Steve Hoffman, Eugene G. Iredale and Julia Yoo, 105 West F Street, 4th FL, San Diego CA 92101.

## II.

## SETTLEMENT FUNDS

Plaintiffs have settled their claims against defendants the County of San Diego, William D. Gore, Steven Block, Arthur Doherty, Yaowaluck Hagg, Susan Conrad, Myra Rada-Gragasin, Christine Eser, Maria Germono, Melissa Grant, Mabel Domingo, Ma Estavillo, Edna Gomez-Sanchez and Helen Salter (the "County Defendants"). (There are four other individual defendants and two other entity defendants who are not a part of this settlement and remain in the action.) The gross settlement amount as to the County Defendants is nine million five hundred thousand dollars ($9,500,000.00). The County Defendants have agreed to pay the entire amount and are ready and willing to pay subject to the approval of this petition. Petitioners acknowledge that, subject to approval by the Court, the settlement is both final and binding. The parties and claimants above are the only persons or entities with an interest in the settlement funds.

///

## III.
## STATEMENT OF THE CASE

The operative pleading is the Fourth Amended Complaint. Plaintiff asserted causes of action against the settling individual defendants including deliberate indifference to a substantial risk of harm to health and safety (42 U.S.C. §1983), and state law causes of action of negligence and failure to summon medical care. Claims were asserted against the County of San Diego and William Gore, sued in his official capacity, for liability for unconstitutional custom or policy (42 U.S.C. §1983), and against the County of San Diego for failure to summon medical care and negligence pursuant to California Government Code §815.2.

## IV.
## PROCEDURAL HISTORY

A complaint was filed in San Diego Superior Court on May 31, 2019. An amended complaint was filed on August 1, 2019. On August 30, 2019, the County removed the case to this Court. The Second Amended Complaint was filed on September 13, 2019. The County filed a Motion to Dismiss the Second Amended Complaint on September 27, 2019. On November 13, 2019, Judge Marilyn L. Huff denied the Motion to Dismiss. On December 13, 2019, the County filed an Answer to the Second Amended Complaint.

On September 10, 2020, the County filed a cross-complaint against the non-settling defendants, Liberty Healthcare Corporation, Coast Correctional Medical Group PC, Quoc Tran, M.D., Friedrike Von Lintig, Michael Stewart and Angelito De La Cruz. On September 16, 2020, with leave of Court, Plaintiff filed the Third Amended Complaint, naming the previously unknown individual and entity defendants. On November 13, 2020, Plaintiff filed the operative Fourth Amended Complaint, ECF No. 53, adding Judy Rainey as co-conservator of Plaintiff.

///
///
///

## V.

## FACTS

The relevant allegations of the complaint are as follows: On April 13, 2018, Colleen Garot was arrested on a misdemeanor bench warrant by defendants Block and Doherty, San Diego Sheriff Deputies. Ms. Garot had obvious and severe facial and head injuries, including a black left eye and bruising, abrasions and redness to her forehead, as well as bruising on her arms and feet. Ms. Garot told Doherty that she had been "very unwell". Although it was obvious that Ms. Garot needed immediate medical attention, Block and Doherty did not request an ambulance or paramedic. Instead, they transported Ms. Garot to the County jail.

Ms. Garot was booked at the jail, where defendant Nurse Hagg performed an intake assessment of Ms. Garot and filled out the Standard Medical Screening form. Despite the obvious signs of trauma to her face and head, the response on the intake form was "N." Another question on the screening form was "Do you have any major medical problems?" The response listed is "claims neurological disorder." Even though Ms. Garot had obvious head trauma and claimed a neurological disorder, Ms. Garot was not seen or examined by a medical doctor. The screening form notes that Ms. Garot denied the black eye was from an injury, but said it was from her neurological disorder. Ms. Garot claimed that the abrasions and redness on her forehead was from a fall 5 days prior.

The following morning, April 14, 2018, at about 7:00 a.m., defendant Deputy Gomez-Sanchez brought Collen Garot in for another evaluation by Nurse Anguitay. Ms. Garot had fallen and stated that "kinda I lost consciousness when I fell." The black eye was noted as "racoon left eye" and the abrasions to her forehead were noted. A bump on the back of Ms. Garot's head was noted from this recent fall. Nurse Anguitay referred Ms. Garot to the medical doctor for further evaluation.

///

///

At approximately 11:00 a.m. on April 14, 2018, non-settling defendant Dr. Tran examined Ms. Garot. The record from that encounter notes that Ms. Garot had "chronic unsteady gait" and tremors, and "multiple bruises on face, left periorbital swelling." Ms. Garot was returned to her cell with order to be on the "lower bunk/tier" and to "continue to monitor."

The following day, April 15, 2018, Ms. Garot was "agitated and uncooperative," made "repeated, nonsensical statements" to the staff, and was placed in a "safety cell." Defendant nurses Conrad and Rada-Gragasin did medical checks on Ms. Garot. At approximately 5:00 p.m. on April 15, 2018, non-settling defendant psychologist Dr. Michael Stewart examined Ms. Garot in her "safety cell." The psychologist noted that Ms. Garot needed prompting to cover herself appropriately and evidenced "significant disorganized" thought process and made contradicting and odd statements. Ms. Garot thought she was in a store and hallucinated, believing a dragonfly was on her arm and that she was seeing a cowboy. The psychologist noted that Ms. Garot was "low risk" and there should be a follow up in one day. Ms. Garot received no medical treatment.

Ms. Garot was transferred to Las Colinas Jail on April 15, 2018 at approximately 7:00 p.m. She was again placed in a safety cell. During the night of April 15 and early morning hours of April 16, 2018, Ms. Garot repeatedly asked the deputies to let her out of her cell. At approximately 12:30 a.m., Ms. Garot was observed with "shakes." Ms. Garot denied having drug or alcohol withdraw symptoms. Again, the bruising to Ms. Garot's eye was noted. Bruising on Ms. Garot's chest and shoulders was also noted. Ms. Garot again said that the bruises were from a fall prior to her incarceration. Defendant nurses Christine Eser, M. Germono, Melissa Grant, Mabel Domino, and Ma Estavillo were involved in safety cell evaluations during the night of April 15 and morning hours of April 16, 2018. At least fourteen San Diego deputies performed safety cell checks on Ms. Garot. At approximately 6:30 a.m. on April 16, 2018, Ms. Garot was observed walking around her cell naked and attempted to climb the wall. Later that morning at approximately 11:00 a.m., non-settling defendant Friedrike Von Lintig, M.D. evaluated

1    Ms. Garot. (It was later discovered that Dr. Von Lintig had evaluated Ms. Garot
2    approximately two hours before Ms. Garot was found lying on the floor seizing). Ms.
3    Garot was observed naked and delusional. The black eye was again noted, and Von
4    Lintig charted that "no acute [m]edical issues [were] noted at this time."

    At approximately 11:20 on April 16, 2018, another County employee checked Ms.
Garot in her safety cell for a seizure. Ms. Garot was found in her cell laying on her back
with "foamy like saliva coming out from her mouth." Deputy #5208 opened the door to
the safety cell. Ms. Garot did not respond when her name was called but she was
moaning. She was placed on her right side and "mild jerky movements to upper part of
body" were noted. The black eye was again noted. Finally, after three days, paramedics
were called and Ms. Garot was taken to the emergency room at Sharp Memorial Hospital.
Sharp diagnosed Ms. Garot with a left basilar skull fracture, acute hypoxemic respiratory
failure, encephalopathy after traumatic brain injury, a large subdural hematoma and
seizure. Ms. Garot is now permanently incapacitated.

## VI.

## DESCRIPTION OF INJURIES AND TREATMENT

Dr. Amy Magnusson, who is a Diplomate, American Board of Physical Medicine
and Rehabilitation with a Subspecialty Board Certification, Brian Injury Medicine,
physically examined Ms. Garot on August 24, 2020. Dr. Magnusson provided a detailed
description of the diagnosis of Ms. Garot's injuries, her past treatment and necessary
future treatment. That report is attached as Exhibit 2.

Briefly, Ms. Garot underwent a left frontal craniotomy at Sharp Memorial Hospital
on April 16, 2018. Her listed diagnoses are "intracranial injury with loss of
consciousness, traumatic subdural hemorrhage with loss of consciousness greater than 24
hours without return to pre-existing conscious level with patient surviving, left base of
skull fracture, attention to gastrostomy, bilateral hand muscle contractures, lack of
coordination, chronic respiratory failure with hypoxia or hypercapnia, compression of
brain." (Ex. 2, page 3, ¶ 2). Ms. Garot remained at Sharp Memorial Hospital until May 2,

2018, at which time she was discharged and admitted to Golden Hill Subacute and Rehabilitation Center. She has continued to receive care at Golden Hill and is still a patient there today.

Dr. Magnusson opined that Ms. Garot will "require lifelong involvement from multiple medical and surgical specialists, multidisciplinary neurorehabilitation, specialized durable medical equipment, medication management, diagnostic evaluations, and 24hr/day skilled nursing care for all aspects of her care management, as well as mobility and activities of daily living." (Ex. 2, page 12, ¶ 1). Dr. Magnusson provides a detailed plan for medically necessary future care on pages 12 through 24 of her report.

Dr. Mary Jesko, who is a Board Certified Life Care Planner, provided a Life Care Plan for Dr. Magnusson's recommendations, attached as Exhibit 3. The anticipated cost of the future medical needs, services and losses reasonably expected is $14,260,623.89. (Ex. 3, page 2).

## VII.

## PROPOSED DISTRIBUTION OF SETTLEMENT PROCEEDS

The gross settlement amount is $9,500,000.00. The proposed settlement agreement and distribution of the funds is attached as Exhibit 4. Petitioners propose that the Gross Settlement Proceeds will be divided as follows: (1) the County will pay $50,000.00 to a Medicare Set-Aside (MSA) Professional Administrator to be named; (2) the County will hold $475,000.00 in an interest bearing trust account for the benefit of the California Department of Healthcare Services for the purpose of satisfying any Medi-Cal lien; (3) $55,000.00 will be placed into a special needs trust for the benefit of Colleen Garot; and (4) the County will purchase an annuity at a cost of $5,595,000.00 for the benefit of Colleen Garot. All annuity payments will be placed into a special needs trust.

### Medical Expenses Incurred

Ms. Garot's medical expenses since she incurred the injuries have been paid exclusively by Medi-Cal. There are no other lien claimants. Notice of the partial settlement and a request for the current lien amount was provided to the California

Department of Healthcare Services (DHCS) on September 22, 2022, via upload to the DHCS Third Party Liability and Recovery Division's online portal. See Declaration of Steve Hoffman and Exhibit 5. A request for a provisional lien amount was previously requested on July 5, 2022. (Id.) DHCS has not yet provided a current lien amount. In a letter from DHCS dated July 11, 2022, DHCS wrote that they were unable to proceed with the request without, among other things, a copy of "the Petition and the Order Approving the Compromise of a minor or person with a disability, if not previously provided." The most recent provisional lien amount provided by DHCS was dated July 8, 2021. (Id.) The amount of the lien as of April 1, 2021 was $441,242.37.

Based on the itemized Medi-Cal charges provided by DHCS, counsel for Petitioner estimates that the total lien amount to date is approximately $630,000.00. Under Welfare and Institutions Code section 14124.72, Medi-Cal's reimbursement consists of the benefits it has paid minus 25% for attorney's fees and a pro rata share of the litigation costs. Thus, the current amount of the Medi-Cal lien, after reductions for attorney fees and a pro rata share of costs is estimated to be less than $450,000.00.

It is the understanding of counsel that DHCS will not negotiate the lien or demand partial payment until the case has resolved entirely. Under the terms of the proposed settlement agreement, the County of San Diego will hold in trust $475,000.00 for the benefit of DHCS to satisfy the Medi-Cal lien when the entire action against all defendants is finally resolved. Any remaining funds, after satisfaction of the lien, will be paid to the Annuity Company to provide for additional monthly income. The Annuity Company and the benefit stream will be reflected in exhibits to the Settlement Agreement and Mutual Release.

**Cost of Litigation:**

The costs associated with the case from May 2019 to the present are $148,193.15. *See* Declaration of Steve Hoffman and Declaration of Eugene G. Iredale and Exhibit 6, the itemization of costs for the instant case.

///

**Attorneys Fees:**

This motion requests approval for attorneys' fees of 33 1/3% of the gross settlement amount, which counsel for Plaintiff has reduced from 40%, which was the percentage agreed upon in the contingency fee agreement. The gross amount of attorneys' fees at 33 1/3% is $3,166,666.67. The Petitioners believe these fees are appropriate because this case involved extensive work in the past 3 ½ years of investigation, litigation and thousands of hours of preparation, legal research, discovery, and briefing.

Plaintiff's counsel has engaged in extensive discovery, including taking or defending 33 depositions. There are 18 individual defendants and 3 entity defendants, requiring significant research and investigation to determine the degree of liability for each. Because of the numerous defendants and the varied medical aspects of the causes of action, counsel engaged in extensive expert consultation and preparation with eight retained experts and at least two other medical experts hired as consultants. Counsel had to locate and interview witnesses. Counsel for Plaintiff obtained and reviewed dozens of hours of videos obtained over the three day period Ms. Garot was in custody, as well as thousands of pages of transcripts, many audio interviews of witnesses, photos and other discovery, including medical records and voluminous policy and procedure manuals.

There are a total of 197 docket entries to date in this case in the District Court alone. Counsel spent thousands of hours reviewing evidence and conducting extensive research on the issues of qualified immunity, Monell issues, and motions to dismiss.

In *Robidoux v. Rosengren*, 638 F.3d 1177 (9th Cir. 2011) the Ninth Circuit reversed the lower court's reduction of attorney fees from 56.2 percent to one third of the net settlement value. The *Robidoux* court found:

> Here, the district court abused its discretion by performing an overly broad review of the proposed settlement and considering factors and state court rules outside the narrow scope of the district court's review. Most importantly, the district court erred in rejecting the settlement on the basis that the provision of

> 56% of the total settlement value for attorney's fees was
> "excessive," and thus the settlement was not "fair and
> reasonable" to the minor plaintiffs. However, as explained
> above, the district court's special duty to protect minor plaintiffs
> requires only that the district court consider whether the net
> recovery of each minor plaintiff is fair and reasonable, without
> regard to the amount received by adult co-plaintiffs and what
> they have agreed to pay plaintiffs' counsel.

*Id*. at 1182.

The trial court must "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Id.* The determination of fairness is an independent, not a comparative, inquiry. According to *Robidoux*, "the district court erred when it focused on the admittedly large proportion of the total settlement value going to Plaintiffs' counsel, instead of reviewing the fairness of each minor's net recovery in isolation."

Here, Colleen Garot is receiving net settlement proceeds of $5,654,140.18. Her conservators are considering proposals for the investment of those funds into a structured settlement. The annuity payments she will receive as a result of the structured settlement is not subject to state or federal taxes.

**<u>Considerations of California Rules of Court Rule 7.955(b)</u>**

The CRC provides the following guideline under Rule 7.955(b) which was adopted on January 1, 2010.

> (b) Factors the court may consider in determining a reasonable attorney's fee
>
> In determining a reasonable attorney's fee, the court may consider the following nonexclusive factors:
>
> (1) The fact that a minor or person with a disability is involved and the circumstances of that minor or person with a disability.

(2) The amount of the fee in proportion to the value of the services performed.

(3) The novelty and difficulty of the questions involved and the skill required to perform the legal services properly.

(4) The amount involved and the results obtained.

(5) The time limitations or constraints imposed by the representative of the minor or person with a disability or by the circumstances.

(6) The nature and length of the professional relationship between the attorney and the representative of the minor or person with a disability.

(7) The experience, reputation, and ability of the attorney or attorneys performing the legal services.

(8) The time and labor required.

(9) The informed consent of the representative of the minor or person with a disability to the fee.

(10) The relative sophistication of the attorney and the representative of the minor or person with a disability.

(11) The likelihood, if apparent to the representative of the minor or person with a disability when the representation agreement was made, that the attorney's acceptance of the particular employment would preclude other employment.

(12) Whether the fee is fixed, hourly, or contingent.

(13) If the fee is contingent:
    (A) The risk of loss borne by the attorney;
    (B) The amount of costs advanced by the attorney; and
    (C) The delay in payment of fees and reimbursement of costs paid by the attorney.

(14) Statutory requirements for representation agreements applicable to particular cases or claims.

In this case, the amount of attorneys' fees requested is 33 1/3% of the gross settlement amount which is fair given the difficulty of the legal issues, the length of litigation, and thousands of pages of discovery and dozens of hours of video and audio. Given these challenges, a settlement of nine million five hundred thousand dollars is a favorable outcome.

All lawyers representing the incompetent person have extensive experience in civil rights litigation. Eugene Iredale has been practicing for over forty-five years, the last twenty-five years of which have included practice in civil rights cases. Julia Yoo has litigated for the past twenty-four years almost exclusively in the most difficult §1983 cases. Steve Hoffman has litigated for the past twelve years, with the last nine years primarily in §1983 cases and government tort claims. Grace Jun has practiced law for 10 years exclusively in the areas of civil rights litigation and federal and municipal torts. This case demanded thousands of hours of legal work from 2019 to the present. Thomas Rainey and Judy Rainey, the co-conservators, have consented to the settlement, the distribution, and the attorney's fees. (See Declaration of Thomas Rainey and Declaration of Judy Rainey, attached.) Counsel advanced over one hundred and forty-eight thousand dollars in cost of litigation over the past three and one-half years and there was a risk, particularly given the complex legal issues, that the individual defendants would have been granted qualified immunity, or that a jury would have returned a defense verdict. Given all these elements, the proposed distribution of funds is fair to Colleen Garot.

**Investment of the Settlement Funds**

The following is a structured settlement that has been secured with the assistance of Manuel R. Valdez, CSSC, of Ringler in San Diego. Mr. Valdez is a Certified Structured Settlement Consultant. He has assisted litigants in over 100 structured settlements in state and federal courts.

Mr. Valdez will be able to lock the settlement proceeds into a quote, under which the principal of $5,595,000.00 for Colleen Garot will be placed in a structured settlement annuity. The payout will include payments with certain period annuity which is

1  guaranteed. Mr. Valdez has prepared a structured settlement proposal attached hereto as
2  Exhibit 7.

3  In the event that the cost of the annuity contract has increased or decreased by the
4  date of the purchase, the amount of the benefit payable will be adjusted upward or
5  downward to whatever payment can be secured for a premium amount of approximately
6  $5,595,000.00.

7  In addition, Petitioner has retained attorney Carol S. Battaglia, Esq. to establish a
8  Special Needs Trust for the benefit of Ms. Garot. On November 9, 2022, Attorney
9  Battaglia filed, in the Superior Court of California, County of San Diego, a Petition for
10 Order: (1) Approving Establishment of the Colleen Beth Garot Special Needs Trust; (2)
11 Authorizing and Directing Co-Conservators to Sign Special Needs Trusts. A conformed
12 copy of the petition is attached as Exhibit 8.

13 That petition includes a sworn verification that all notices required by law,
14 including those required by California Probate Code Sections 3602(f) and 3604(d), have
15 been provided to California Department of Health Care Services. (See Exhibit 8, pages
16 13-16). That petition also requests and order that the Co-Trustees of the Colleen Beth
17 Garot Special Needs Trust post bond in the amount of $56,000.00 per California Rules of
18 Court 7.207 and 7.903(5). (See Exhibit 8, page 11).

19 The hearing on the petition is scheduled for December 09, 2022, at 9:00 a.m.
20 before the Hon. John B. Scherling. Petitioner will fund the trust with an initial investment
21 of $55,000.00. Attorney Battaglia's fee for establishing the Special Needs Trust is
22 $6,000.00, which will be paid out of the settlement funds.
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

# VIII.
# SUMMARY OF PROPOSED DISTRIBUTION

| | |
|---|---|
| Gross Settlement Amount: | $ 9,500,000.00 |
| Deductions from Total Funds: | |
|   Attorney Fees: | $ 3,166,666.67 |
|   Legal Costs: | $ 148,193.15 |
|   Medi-Cal Withholding: | $ 475,000.00 |
|   Medicare Set Aside: | $ 50,000.00 |
|   SNT -Attorney fees: | $ 6,000.00 |
| Total Deductions: | $ 3,845,859.82 |
| **Net Settlement to Colleen Garot** | **$ 5,654,140.18** |

# IX.
# FAIRNESS OF SETTLEMENT AMOUNT

Nine million five hundred thousand dollars is a fair settlement amount in this case. Defendants contested liability, causation and damages. The individual County defendants were entitled to file an interlocutory appeal if the Court had denied a motion for summary judgment on qualified immunity grounds, which had the potential to result in protracted litigation for years to come. There was uncertainty as to a favorable judgment for Plaintiffs in this action, and as to the amount of damages Plaintiffs would be awarded had they prevailed.

For the foregoing reasons, Petitioner and counsel below seek an order approving the entire settlement, and further ordering distributions of the settlement proceeds consistent with the summary above and the proposed order filed concurrently herewith.

Respectfully submitted,

Dated: November 23, 2022  LAW OFFICE OF STEVE HOFFMAN

s/ Steve Hoffman
STEVE HOFFMAN
Attorney for Plaintiff Colleen Garot
Email: shoffmanlaw@gmail.com

Dated: November 23, 2022  IREDALE & YOO, APC

/s Eugene Iredale
Eugene Iredale
Julia Yoo
Grace Jun
Attorneys for Plaintiff Colleen Garot