1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT
9                          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  THOMAS RAINEY AND JUDY RAINEY, CO-CONSERVATORS, ON BEHALF OF COLLEEN GAROT, | Case No.:   19CV1650-L(BLM) |
| 12 | **REPORT AND RECOMMENDATION FOR ORDER GRANTING EX PARTE PETITION FOR ORDER APPROVING SETTLEMENT INVOLVING INCOMPETENT ADULT AND FOR DISTRIBUTION OF SETTLEMENT FUNDS** |
| 13                                      Plaintiff, | |
| 14  v. | |
| 15  COUNTY OF SAN DIEGO, et al., | |
| 16 | |
| 17                                     Defendants. | **[ECF No. 203]** |

18
19
20         Currently before the Court is Plaintiffs' November 23, 2022, *Ex Parte* Petition for Order
21 Approving Settlement Involving Incompetent Adult and for Distribution of Settlement Funds
22 ("Petition").  ECF No. 230 ("Pet.").  This Report and Recommendation is submitted to United
23 States District Judge M. James Lorenz pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule
24 17.1 of the United States District Court for the Southern District of California.  After reviewing
25 the Petition and all supporting documents, and for the reasons discussed below, the Court
26 **RECOMMENDS** that District Judge Lorenz **GRANT** the Petition as set forth below.

                                    **BACKGROUND**
27         The above entitled matter was removed to this Court on August 30, 2019.  ECF No. 1.
28

                                          1

On November 13, 2020, Plaintiffs[1] filed the operative complaint in this matter, the Fourth Amended Complaint ("FAC"), alleging claims for deliberate indifference to a substantial risk of harm, liability for unconstitutional custom or practice, professional negligence, failure to summon medical care, and negligence.  ECF No. 53.

On October 17, 2022, Defendants County of San Diego, William D. Gore, Steven Block, Arthur Doherty, Yaowaluck Hagg, Susan Conrad, Myra Rada-Gragasin, Christine Eser, Maria Germono, Melissa Grant, Mabel Domingo, Ma Estavillo, Edna Gomez- Sanchez and Helen Salter ("County Defendants") filed a Motion for Good Faith Settlement Determination and for The Court to Retain Jurisdiction to Enforce the Settlement.  ECF No. 180.  County Defendants sought an order finding that the proposed $9.5 million settlement was made in good faith, is fair and reasonable, and that all current and future claims against County Defendants for "implied indemnity, partial indemnity, equitable indemnity, or declaratory relief based on principles of comparative fault" were barred.  Id. at 2.  On October 31, 2022, Defendants Coastal Hospitalist Medical Associates, Coast Correctional Medical Group, Friedrike Von Lintig, M.D., Angelito Dela Cruz, and Defendants Michael Stewart, PH.D. and Liberty Healthcare of California, Inc. and Cross-Claim Defendants, Michael Stewart, PH.D. and Liberty Healthcare Corporation ("Non-settling Defendants") opposed the motion.  ECF Nos. 183-184.  County Defendants replied on November 21, 2022.  ECF No. 200.  On March 22, 2023, Judge Lorenz issued an order analyzing the Tech-Bilt factors and granting Plaintiffs' motion for good faith settlement.  ECF No. 225.

On November 23, 2022, Plaintiffs filed the instant Petition seeking approval of the proposed settlement and distribution of funds.  Pet.  Non-settling Defendants filed a Partial Opposition to Plaintiff's *Ex Parte* Petition for Order Approving Settlement Involving Incompetent Adult and for Distribution of Settlement Funds asserting that the Petition is not ripe until the Court rules on the County Defendants' motion for good faith settlement determination.  ECF No. 204.  Defendants noted that they "do not oppose the distribution of the settlement funds as

---

[1] Plaintiffs are Thomas Rainey and Judy Rainey, co-conservators of Colleen Garot, appointed by the Superior Court of California, County of San Diego.  Fourth Amended Complaint at 2.  Colleen Garot is an incompetent adult individual who resides in San Diego County, California.  Id.

1  outlined in the Petition" and "[i]f the County Defendants' motion for good faith settlement

2  determination is approved, then this opposition is moot. Id. at 2-3.

3        On March 14, 2023, the instant case was transferred to the undersigned magistrate judge

4  and on March 16, 2023, the Court set a hearing on the Petition.  ECF Nos. 223 & 224.  On March

5  22, 2023, the Court presided over the hearing and obtained additional and updated information

6  regarding the Petition and proposed settlement.  ECF No. 226, Hearing Transcript.  During the

7  March 22, 2023 hearing, Non-settling Defendants confirmed that because Judge Lorenz granted

8  County Defendants' motion, their opposition is moot and they take no position on the pending

9  Petition. Id.

10        On March 23, 2023, Plaintiffs filed an Addendum to *Ex Parte* Petition for Order Approving

11  Settlement Involving Incompetent Adult and for Distribution of Settlement Funds ("Addendum")

12  providing additional information and documents.  ECF No. 227.

13  **FACTUAL BASIS**

14        The parties are familiar with the facts underlying this case and the Court adopts the facts

15  as set forth in Plaintiffs' Petition, County Defendants' motion for good faith settlement, and

16  Judge Lorenz's order granting County Defendants' motion.  See Pet.; see also ECF Nos. 180,

17  225.  The Court accepts the summary provided by Plaintiffs' counsel that Ms. Garot has

18  undergone extensive surgery and treatment, has been left incapacitated, and is expected to

19
20          require lifelong involvement from multiple medical and surgical specialists,
        multidisciplinary neurorehabilitation, specialized durable medical equipment,
21          medication management, diagnostic evaluations, and 24hr/day skilled nursing
        care for all aspects of her care management, as well as mobility and activities
22          of daily living.

23  Pet. at 6-7.

24  **LEGAL STANDARD**

25        It is well settled that courts have a special duty to safeguard the interests of litigants who

26  are minors or incompetents in civil litigation.  Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

27  17(c) (district courts "must appoint a guardian *ad litem*—or issue another appropriate order—to

28  protect a minor or incompetent person who is unrepresented in an action."); see also Robidoux

v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011)[2]. "In the context of proposed settlements in suits involving [incompetent] plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the [incompetent person].'" Robidoux, 638 F.3d at 1181 (quoting Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir. 1978)); see also Salmeron v. United States, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*."). To facilitate the Court in satisfying the duty to safeguard, Civil Local Rule 17.1(a) provides that "[n]o action by or on behalf of a minor or incompetent will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." CivLR. 17.1(a). This requires the Court to determine if the settlement is in the best interests of the incompetent and to consider not only the fairness of the amount of the settlement, but the structure and manner of distribution of the assets for the benefit of the incompetent.

The Ninth Circuit established that courts reviewing the settlement of a minor's federal claim should "limit the scope of their review to the question of whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." Robidoux, 638 F.3d at 1181–82. They should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs'

---

[2] The Court will apply the standard identified in Robidoux even though Robidoux involved a minor because for this analysis, the terms "minor" and "incompetent person" are interchangeable. Banuelos v. City of San Bernardino, 2018 WL 6131190, at *2 (C.D. Cal., Apr. 26, 2018) (citing Mugglebee v. Allstate Ins. Co., 2018 WL 1410718, at *2 (S.D. Cal. Mar. 21, 2018) (applying Robidoux to a case involving an incompetent plaintiff); see also G.C. By and Through Clark v. San Diego Unified School District, 2021 WL 3630112, at *2 (S.D. Cal., Aug. 17, 2021) ("District courts have extended the Robidoux inquiry to cases involving the approval of an incompetent plaintiff's settlement") (citing Banuelos, 2018 WL 6131190 at *2; Mugglebee, 2018 WL 1410718 at *2; Smith v. City of Stockton, 185 F. Supp. 3d 1242 (E.D. Cal. 2016)).

counsel—whose interests the district court has no special duty to safeguard." <u>Id.</u> at 1182 (citing <u>Dacanay</u>, 573 F.2d at 1078). "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." <u>Robidoux</u>, 638 F.3d at 1182.

The Ninth Circuit limited its decision in <u>Robidoux</u> to "cases involving the settlement of a minor's <u>federal</u> claims." <u>Id.</u> at 1181–82 (emphasis added). Where a settlement involves state law claims, federal courts are generally guided by state law rather than <u>Robidoux</u>. <u>J.T. by & Through Wolfe v. Tehachapi Unified Sch. Dist.</u>, 2019 WL 954783, at *2 (E.D. Cal. Feb. 27, 2019). <u>See also</u> <u>A.M.L. v. Cernaianu</u>, 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014) (collecting cases). The court in <u>A.M.L.</u> noted that, although federal courts generally require claims by minors to "be settled in accordance with applicable state law," the Ninth Circuit in <u>Robidoux</u> held such an approach "places undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery of the minor plaintiffs." <u>Id.</u> at *2 (quoting <u>Robidoux</u>, 638 F.3d at 1181) (other citation omitted). <u>But</u> <u>see</u> <u>Mitchell v. Riverstone Residential Grp.</u>, 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) ("[A] number of district courts have applied the rule provided in <u>Robidoux</u> to evaluate the propriety of a settlement of a minor's state law claims as well") (collecting cases).

The California Probate Code provides the applicable statutory scheme for approval of a minor's compromise under state law. <u>See</u> Cal. Prob. Code §§ 3601 <em>et seq</em>. Under California law, the Court is tasked with evaluating the reasonableness of the settlement and determining whether the compromise is in the best interest of the minor. <u>A.M.L.</u>, 2014 WL 12588992, at *3 (citations omitted). The Court is afforded "broad power . . . to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it." <u>Goldberg v. Superior Court</u>, 23 Cal. App. 4th 1378, 1382 (Cal. Ct. App. 1994); <u>see</u> <u>also</u> <u>Pearson v. Superior Court</u>, 136 Cal. Rptr. 3d 455, 459 (Cal. Ct. App. 2012) (explaining that the purpose of requiring court approval of a minor's settlement is to "allow[] the guardians of a minor to effectively negotiate a settlement while at the same time protect[ing] the minor's interest by requiring court approval before the settlement can have a binding effect

5

on the minor").

## DISCUSSION

**A.    Proposed Settlement**

The proposed settlement requires County Defendants to pay nine million five hundred thousand dollars ($9,500,000.00) for the benefit of Ms. Garot.  Plaintiffs explained that the settlement amount would be divided as follows: $3,166,666.67 for attorneys' fees (approximately 33.333 % of the total settlement amount), $148,193.15 to cover legal and expert costs, $50,000.00 to fund a Medicare Set-Aside (MSA)[3], $475,000.00 to satisfying existing Medi-Cal liens, $6,000.00 in attorneys' fees for the attorney who created the Special Needs Trust, and $5,654,140.18 to Ms. Garot.  Pet. at 14.  Approximately fifty thousand dollars of Ms. Garot's money will be directly deposited into her Special Needs Trust ("SNT") to cover her current needs. Id. at 3.   The remaining $5.595 million will be used to purchase one or more structured settlement annuities to provide monthly income to cover Ms. Garot's living expenses.  Id. at 12.

On March 22, 2023, Judge Lorenz determined that the total settlement, $9.5 million on behalf of the County Defendants, is a fair and reasonable settlement reached in good faith.  ECF No. 225.  As a result, the only issue remaining for this Court is whether the terms of the settlement, including the net distribution to Ms. Garot, are fair and reasonable.

With regard to the net amount of money going to Ms. Garot, the Court finds that it is fair and reasonable.  First, Plaintiffs and the County Defendants advised the Court during the hearing that the total settlement amount is the largest settlement paid by San Diego County for injuries (or deaths) occurring in a jail facility.  Hearing Transcript.  Plaintiffs' counsel also stated that there was a larger verdict in a similar case involving catastrophic injuries inflicted in a jail facility but the verdict was reduced post-trial to an amount less than the proposed settlement in this case.  Id.  Because both of those cases are likely to have similar costs and attorneys' fees, the Court finds that the recovery in other cases supports a finding that the net payment to Ms. Garot

---

[3] As discussed below, the requested amount of the MSA was modified in the Addendum.  ECF No. 227.  The remaining money will be deposited in Ms. Garot's Special Needs Trust.  Id.

19CV1650-L(BLM)

1  is fair and reasonable.

2          Second, the net payment to Ms. Garot is anticipated to cover her necessary and desired

3  living expenses for the remainder of her life.  The money will be used to fund structured

4  settlement annuities that will provide Ms. Garot with monthly income of between $37,000 and

5  $47,510 for approximately fifteen years and one month.  See ECF No. 227-1 at Exh. 9; see also

6  ECF No. 203-1, Declaration of Steve Hoffman in Support of *Ex Parte* Petition for Order Approving

7  Settlement Involving Incompetent Adult and for Distribution of Settlement Funds ("Hoffman

8  Decl.") at Exhibit 7.  During the hearing, Plaintiffs and County Defendants advised the Court that

9  Ms. Garot's life expectancy is approximately fifteen years.  The monthly income will enable Ms.

10  Garot to be transferred from the Medi-Cal paid facility to a "specialty provider of rehabilitation

11  services for people with brain injuries."  ECF No. 221-1, Declaration of Steve Hoffman in Support

12  of Plaintiffs' Unopposed *Ex Parte* Application to Expedite Consideration of Plaintiff's Petition for

13  Order Approving Settlement Involving Incompetent Adult at ¶ 4.  Ms. Garot was sexually

14  assaulted by another inmate at her current facility and her family members and co-conservators

15  are anxious to move her to a "higher-level facility with far fewer patients and a higher staff to

16  patient ratio, which hopefully will provide not only higher level of rehabilitative care, but also

17  better monitoring of patients and a safer environment[.]"  ECF 221 at 3.  The monthly income

18  from the annuities is expected to cover the costs of the desired higher-level facility.  See ECF

19  No. 221 and 221-1; see also Hoffman Decl. at Exhs. 7 at 12-13 and 8.  Relatedly, the fact that

20  Ms. Garot will receive the settlement funds immediately as opposed to after a trial and/or appeal

21  (or receiving no money if she is unsuccessful at trial) is a significant benefit to Ms. Garot.  The

22  settlement funds will immediately be available to Ms. Garot and enable her to move to the more

23  desirable location in the very near future.  The net amount to Ms. Garot likely will be life changing

24  in the quality of care that she will receive and will provide that care for her expected lifetime,

25  which favors a finding that it is fair and reasonable.

26          Finally, while not determinative, counsel and Ms. Garot's parents and co-conservators

27  believe that the net settlement amount is fair and reasonable.  See ECF No. 203-3, Declaration

28  of Thomas Rainey in Support of *Ex Parte* Petition for Order Approving Settlement Involving

19CV1650-L(BLM)

Incompetent Adult and for Distribution of Settlement Funds ("T. Rainey Decl.") at ¶ ¶ 4-6; see also ECF No. 203-4, Declaration of Judy Rainey in Support of *Ex Parte* Petition for Order Approving Settlement Involving Incompetent Adult and for Distribution of Settlement Funds ("J. Rainey Decl.") at ¶ ¶ 4-6.

Based upon all of the evidence and information, the Court finds that the net amount being provided to Ms. Garot is fair and reasonable, given Ms. Garot's injuries, the legal and factual issues involved in this case, and recoveries in similar cases.  See Robidoux, 638 F.3d at 1181-82.

**B.   Attorney's Fees and Costs**

In addition to assessing whether the settlement is fair and reasonable, the Court must approve the attorneys' fees and costs to be paid for representation of an incapacitated person. See Cal. Prob. Code § 3601; Cal. Rule of Ct. 7.955.[4]   To determine whether a request for attorney's fees is reasonable, the Court may consider factors such as the

> (1) The fact that a minor or person with a disability is involved and the circumstances of that minor or person with a disability.(2) The amount of the fee in proportion to the value of the services performed.(3) The novelty and difficulty of the questions involved and the skill required to perform the legal services properly.(4) The amount involved and the results obtained.(5) The time limitations or constraints imposed by the representative of the minor or person with a disability or by the circumstances.(6) The nature and length of the professional relationship between the attorney and the representative of the minor or person with a disability.(7) The experience, reputation, and ability of the attorney or attorneys performing the legal services.(8) The time and labor required.(9) The informed consent of the representative of the minor or person with a disability to the fee.(10) The relative sophistication of the attorney and the representative of the minor or person with a disability.(11) The likelihood, if apparent to the representative of the minor or person with a disability when the representation agreement was made, that the attorney's acceptance of the particular employment would preclude other employment.(12) Whether the fee is fixed, hourly, or contingent.(13) If the fee is contingent:(A) The risk of loss borne by the attorney;(B) The amount of costs advanced by the attorney; and(C) The delay in payment of fees and reimbursement of costs paid by the

---

[4] Similarly, San Diego Superior Court Civil Rule 2.4.6.2 states that, regarding a minor's compromise, "the court will determine the amount of costs, expenses, and attorney's fees to be allowed from the proceeds of the settlement."

attorney.(14) Statutory requirements for representation agreements applicable to particular cases or claims.

See California Rules of Court 7.955(b).

      1.    Attorneys' Fees

Plaintiffs' attorneys are seeking $3,166,666.67, which is thirty-three and one third percent of the gross recovery.[5]  Pet. at 9-12.  In support of the request, Plaintiffs' counsel states that Eugene Iredale has over forty-five years of experience, twenty-five of which include civil rights litigation, Julia Yoo has twenty-four years of experience with difficult section 1983 cases, Steve Hoffman has twelve years of litigation experience, nine of which have been focused on section 1983 litigation and government tort claims, and Grace June has ten years of practice experience exclusively dealing with civil rights litigation and federal and municipal torts.  Id. at 12.  This case, which includes eighteen individual Defendants and three entity Defendants, has required thousands of hours of legal work since 2019.  Id. at 9, 12.  Numerous hours were spent researching and investigating to determine the liability of each Defendant and due to the numerous medical issues in the case, counsel was required to engage in extensive expert consultation and preparation that included eight retained experts and two medical expert consultants.  Id. at 9.  Additionally, counsel notes that they reviewed dozens of hours of video from Ms. Garot's time in custody, thousands of pages of transcripts, audio witness interviews, photos, medical records, and policy and procedures manuals.  Id. at 12.  Finally, the docket in this case is long and counsel spent many hours performing extensive research on the issues of qualified immunity, Monell issues, and motions to dismiss.  Id.

Plaintiffs' counsel and co-conservators executed a retainer agreement which provided

---

[5] Plaintiffs are also seeking $6,000.00 in attorneys' fees for the creation of the Special Needs Trust.  Pet. at 14.  Plaintiffs' counsel retained Carol S. Battaglia, Esq. to establish a Special Needs Trust for Ms. Garot.  Ms. Battaglia filed the petition to establish the trust and the hearing was scheduled for December 9, 2022 before the Honorable John B. Scherling.  Id.; see also Hoffman Decl. at Exh. 8.  During the hearing, Plaintiffs' counsel advised the Court that Judge Scherling approved the petition establishing the Colleen Beth Garot Special Needs Trust. ECF No. 227 at 2; Exh. 10.  Ms. Battaglia is an expert in the field of Special Needs Trusts and the Court finds that her fee is fair and reasonable.

19CV1650-L(BLM)

that counsel would receive 40% of the gross settlement amount.  Id. at 9 ("[t]he Petitioners believe these fees are appropriate because this case involved extensive work in the past 3 ½ years of investigation, litigation and thousands of hours of preparation, legal research, discovery, and briefing").  As part of this proposed settlement, Plaintiffs' counsel agreed to reduce their recovery to 33.333%.  Id.  Co-Conservators Thomas and Judy Rainey declare that they have carefully considered the attorney's fees and costs requested in this case and believe that the settlement terms are fair and in the best interest of Ms. Garot.  See T. Rainey Decl. at  ¶¶ 4 & 5; see also J. Rainey Decl. at ¶¶  4 & 5.

Given the extensive experience of Plaintiffs' attorneys, the length of the litigation, the difficult and complex legal and factual issues raised in the litigation, and the significant success achieved by counsel, the Court finds that counsel's requested attorneys' fee award of $3,166,666.67, which is thirty-three percent (33%) of Plaintiffs' gross settlement, is reasonable.

2.    Expert Costs

Plaintiffs' counsel, Steve Hoffman, seeks to recover $42,677.50 for expert fees.  Hoffman Decl. at ¶ 8, Exhibit 6 at 2-3.  Plaintiffs' counsel, Eugene Iredale, seeks to recover $45,582.33 for expert fees.  ECF No. 203-2, Declaration of Eugene Iredale in Support of *Ex Parte* Petition for Order Approving Settlement Involving Incompetent Adult and for Distribution of Settlement Funds ("Iredale Decl.") at ¶ 3, Exhibit 6 at 4.  Both attorneys state that they paid the expert expenses in this litigation.  Hoffman Decl. at ¶ 8; see also Iredale Decl. at ¶ 3.  The Petition notes that counsel had to "engage[] in extensive expert consultation and preparation with eight retained experts and at least two other medical experts hired as consultants" due to the numerous medical aspects of the causes of action.  Pet. at 9.

During the hearing, Plaintiff's counsel provided additional information about the various experts that were hired and their areas of expertise.  Dr. Mathis and Mr. McMunn were hired as consultants on the standard of care for physicians (Mathis) and nurse practitioners (McMunn) and Dr. Homer D. Venters was hired as an expert on the standard of care for both doctors and nurse practitioners.  See Hearing Transcript.  Plaintiffs' counsel paid $2,725.00, $11,500.00, and $5,600.00 respectively for Drs. Mathis and Venters' and Mr. McMunn's services.  Hoffman Decl.

at Exh. 6. Dr. Michael A. Lobatz was hired as a neurology expert on damages and causation and paid $11,430.00.  See Hearing Transcript; see also Hoffman Decl. at Exh. 6.  Mr. Roger Clark consulted about jail procedures and the appropriate administration of medical care in the jail. See Hearing Transcript.  He was paid $3,500.00 for his services.  Hoffman Decl. at Exh. 6.  Mr. Don DeCamara is a Medi-Cal Lien Negotiation Expert attorney who was consulted regarding the possible reduction of the Medical lien and was paid $3,955.00.  See Hearing Transcript; see also Hoffman Decl. at Exh. 6.  Dr. Stephen Dorros, a neurological radiologist consulted with Plaintiffs' counsel about causation and damages and the interpretation of neurological images.  Dr. Dorros received $8,950.00.  Hoffman Decl. at Exh. 6.  Brian P. Worthington is an attorney Plaintiffs' counsel consulted regarding insurance bad faith claims and policy limit demand law who was paid $2,320.00.  Hoffman Decl. at Exh. 6.  Expert economist Michael Willoughby was paid $13,077.33.  Id.

Plaintiffs also hired Dr. Amy Magnusson, a Diplomate, American Board of Physical Medicine and Rehabilitation with a Subspecialty Board Certification, Brain Injury Medicine to examine Ms. Garot and provide a description of Ms. Garot's diagnosis, injuries, past treatment, and necessary future treatment.  Pet. at 6; see also Hoffman Decl. at Exh. 2, 6.  Plaintiffs' counsel paid $6,250.00 for Ms. Magnusson's services.  Hoffman Decl. at Exh. 6. Mary Jesko, a Board Certified Life Care Planner,  was hired to provide a Life Care Plan for Ms. Garot based on Dr. Magnusson's recommendations.  Pet. at 7; see also Hoffman Decl. at Ex. 3.  Plaintiffs' counsel paid $14,612.50 for Ms. Jesko's services.  Hoffman Decl. at Exh. 6.

Because of the complexity of the case, the numerous medical and legal aspects to the various causes of action, and the numerous defendants, the Court finds it was reasonable, if not necessary, to retain the identified experts.  Given the facts of this case, the Court finds that the expert fees while high, were necessary for the successful resolution of the case and are fair and reasonable.

3.    Medi-Cal Costs

To date, Ms. Garot's medical expenses have been paid exclusively by Medi-Cal, the only lien claimant.  Pet. at 7.  Plaintiffs' counsel requested a current lien amount from Medi-Cal on

19CV1650-L(BLM)

September 22, 2022 from the California Department of Healthcare Services, but no amount has been received.  Id. at 8.  The Department informed counsel that it was "unable to proceed with the request without, among other things, a copy of "the Petition and the Order Approving the Compromise of a minor or person with a disability, if not previously provided."  Id.  A provisional lien amount was provided and as of April 1, 2021 was $441,242.37.  Id.  Plaintiffs estimate the current amount of the Medi-Cal lien to be $450,000.00[6] and state that the Department will not negotiate the amount of the lien or demand payment until this case is resolved.  Id.  Accordingly, the proposed settlement places $475,000.00 aside for satisfaction of the Medi-Cal lien once this matter is resolved.  Id.  Any remaining monies will be provided to the annuity company as discussed below.  Id.  The parties recognize that the amount of the medical lien likely has increased, but they are unable to confirm the current amount until the instant matter is resolved.  See  Hearing Transcript.  At the hearing, counsel for the County Defendants stated that despite the likely increase in the lien, $475,000 is still an appropriate amount of money to set aside.  Id. Plaintiffs' counsel agreed and stated that they believe the amount of the lien will be significantly reduced once this litigation is resolved and that their expert, Mr. Don DeCamara, is working on the possible reduction of the lien.  Id.

Given the factors described above, the Court finds the lien to be a reasonable cost.

4.    Medicare Costs

Plaintiffs' counsel initially believed that fifty thousand dollars ($50,000.00) of the settlement monies would be placed in a Medicare Set-Aside ("MSA") account and that the Medicare Set-Aside Administrator would be named in the future. Pet. at 7.  During the hearing, counsel for Plaintiffs and the County Defendants stated that this account is designed to ensure that there is sufficient money available to reimburse Medicare for any Medicare liens or expenses that require reimbursement.  See Hearing Transcript.  Counsel represented that they had hired a Medicare vendor who analyzed the facts and determined that $50,000 was the appropriate

---

[6] Plaintiffs arrived at this number by taking the current estimated lien amount of $630,000.000 and subtracting 25% for attorneys' fees and a pro rata share of the litigation costs.  Pet. at 8 (citing Welfare and Institutions Code section 14124.72).

amount to place in reserve. Id.

Plaintiffs' March 23, 2023, Addendum included an updated report and quote from Medivest, a Medicare Secondary Payer Provider and a MSA Professional Administration Company, stating that the correct amount needed to fund the MSA is $29,339.87, not $50,000.00. ECF No. 227 at 2, Exh. 11. Plaintiffs' counsel stated "[b]ecause the revised amount of the cost of the MSA [is] now no more than $29,339.87, which is lower than the $50,000.00 estimate in the original petition, Petitioner requests that the $20,660.13 remainder, or the final amount of remainder after Mr. Valdez obtains annuity quotes, be distributed to the Colleen Beth Garot Special Needs Trust." Id. at 2.

The Court finds the establishment of the MSA, and any costs associated with its administration, to be reasonable. The Court also finds that Plaintiffs' request in the Addendum is appropriate and orders that the remaining $20,660.13 (or whatever is the final amount) be deposited into Ms. Garot's Special Needs Trust.

### 5.   Remaining Costs

The remaining costs at issue total $59,935.32 and include $944.27 in court costs, $44,496.66 in depositions, $25.00 in witness fees, $6,439.80 in court reporting fees, $2,500 in exhibits, $3,349.18 in investigations, and $1,830.00 in mediation. Hoffman Decl. at ¶ 8, Exh. 6; Iredale Decl. at ¶ 3. The Court finds theses costs to be fair and reasonable under the circumstances of this case.

### 6.   Conclusion

After reviewing the various litigation costs, and considering the facts and issues in this case, the Court finds that the following requested fees and costs are fair and reasonable and result in a settlement that is in the best interests of Ms. Garot.

| Item | Amount |
|---|---|
| Gross Settlement | $9,500,000.00 |
| Attorneys' Fees (33%) | ($3,166,666.667) |
| Special Needs Trust Attorney Fee | ($6,000.00) |
| Litigation Costs | ($88,259.83 expert fees)<br>($59,933.32 litigation costs) |
| Medi-Cal Withholding | ($475,000.00) |

| Medicare Set Aside | (the required amount between $29,339.87 and $50,000 with the remainder being deposited in Ms. Garot's Special Needs Trust) |
|---|---|
| Total to Ms. Garot: | $5,654,140.18 (plus a potential additional $20,660.13 from the MSA) |

## C. **Method of Disbursement**

Pursuant to CivLR 17.1(b)(1), any money recovered by an incompetent who resides in California must be disbursed in accordance with the California Probate Code, regardless of whether the incompetent's claims arise under state or federal law.  Courts may use a wide variety of methods for the disbursement of settlement funds to an incompetent.  See Cal. Prob. Code § 3600 et. seq.  Specifically,

> the court making the order or giving the judgment referred to in Section 3600 shall, upon application of counsel for the minor or person with a disability, order any one or more of the following:
>
> (a) That a guardian of the estate or conservator of the estate be appointed and that the remaining balance of the money and other property be paid or delivered to the person so appointed.
>
> (b) That the remaining balance of any money paid or to be paid be deposited in an insured account in a financial institution in this state, or in a single-premium deferred annuity, subject to withdrawal only upon the authorization of the court, and that the remaining balance of any other property delivered or to be delivered be held on conditions the court determines to be in the best interest of the minor or person with a disability.
>
> (c) After a hearing by the court, that the remaining balance of any money and other property be paid to a special needs trust established under Section 3604 for the benefit of the minor or person with a disability. Notice of the time and place of the hearing and a copy of the petition shall be mailed to the State Director of Health Care Services, the Director of State Hospitals, and the Director of Developmental Services at the office of each director in Sacramento at least 15 days before the hearing.
>
> []
>
> (i)    That the remaining balance of the money and other property be paid or delivered to the person with a disability.

Prob. Code, § 3611.

As discussed above and during the hearing, the parties are working with Manuel R.

14

Valdez, a Certified Structured Settlement Consultant, to fund a structured settlement annuity (or annuities) with the goal of providing a monthly income that will pay for Ms. Garot's care in a higher-level care facility for the rest of her lifetime.  Pet. at 12; see also ECF No. 227 at 2, Exh. 9 (Updating Hoffman Decl. at Exh. 7); Hearing Transcript.  The settlement provides $5.595 million to fund the annuities and the parties represented that Ms. Garot has a life expectancy of fifteen years.  At the time the Petition was filed, Mr. Valdez had identified three annuities that could be purchased with the money that would provide monthly income to Ms. Garot of $38,000 to $47,510 for more than fifteen years.  Hoffman Decl. at Exh. 7.  During the hearing, counsel and Mr. Valdez represented that the annuity rates had increased but he had located an annuity that would provide sufficient income to Ms. Garot, with an annual rate increase, to cover the facility expenses for fifteen years and one month.  See Hearing Transcript; see also ECF No. 221-1, Declaration of Steve Hoffman in Support of Plaintiffs' Unopposed *Ex Parte* Application to Expedite Consideration of Plaintiff's Petition for Order Approving Settlement Involving Incompetent Adult at ¶ at 5, Exh. 1.  While he has not yet finalized the terms, Mr. Valdez provided a new annuity option that would provide monthly income of $37,890 increasing at a rate of 1.50% every year, which was included in the Addendum.  ECF No.  Mr. Valdez assured the Court that he will use only the best, AAA rated, annuity issuers and that he will continue to work to find the best option for Ms. Garot.  Hearing Transcript.

Plaintiffs hired Carol Battaglia, an experienced Probate attorney, to create a Special Needs Trust for Ms. Garot. Pet. at 13.  Ms. Battaglia created the Colleen Beth Garot Special Needs Trust, which was approved by Superior Court Judge John B. Scherling on December 9, 2022. ECF No. 227-2 at Exh. 10.  Judge Scherling found that the SNT complies with all relevant state laws and approved the appointment of Elizabeth S. Del Pozo and Christina E. Tang, licensed private professional fiduciaries (State License No. 32 and 669, respectively), as Co-Trustees of the SNT.  Id. at Exh. 10 at 5; see also Hearing Transcript.  Ms. Del Pozo and Ms. Tang will manage the SNT and are authorized to "invest in mutual funds and in United States government bonds with maturity dates later than 5 years" Id.  They are also authorized to pay themselves up to $600.00 per month without prior approval.  Id.  Any request for more than $600 will be

1   handled by the probate court.  Id.   Additionally, Judge Scherling authorized and directed Co-

2   Trustees Del Pozo and Tang to post a bond in the amount of $56,000.00.[7]  Hoffman Decl. at

3   Exh. 8.  Judge Scherling will maintain continuing jurisdiction over the SNT.  ECF No. 227-2 at

4   Exh. 10 at 5.

5         Approximately $50,000 of the settlement money will immediately be deposited into the

6   Trust to cover Ms. Garot's current needs, including her move to the NeuroRestorative La Mesa,

7   a facility with "programs for rehabilitation will provide [Ms. Garot] with the best opportunity of

8   restoring some of her functionality."  See Hearing Transcript; see also Hoffman Decl. at Exh. 8.

9   The structured settlement annuity disbursements and any remaining money from the MSA

10  reserve also will be deposited into the SNT.  See Hoffman Decl. at Exhs. 7 and 8.  The negotiated

11  expense for MS. Garot's care at NeuroRestorative La Mesa is $38,000 per month. Hoffman Decl.

12  at Exh. 8.  "[T]he SNT will function as a pass-through to receive the funds and immediately pay

13  them to NeuroRestorative La Mesa."  Id.  Ms. Garot is the sole beneficiary of the SNT which will

14  terminate once the trust assets are depleted or the beneficiary passes away.  Id.

15        The Court finds that the proposed annuity or annuities and the use of the Special Needs

16  Trust are appropriate and in the best interests of Ms. Garot.

17                              **CONCLUSION**

18        After conducting an independent inquiry and evaluation of the proposed settlement, the

19  Court finds that the proposed settlement is fair, reasonable, and in the best interests of Ms.

20  Garot, given the legal and factual issues involved in this case, and recoveries in similar cases.

21  See Robidoux et al., 638 F.3d at 1181-82 (holding that district courts should limit the scope of

22  their review of a compromise or settlement of a minor's claims "to the question whether the net

23  amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the

24  facts of the case, the minor's specific claim, and recovery in similar cases").  The Court also finds

25  that the proposed expenses and attorneys' fees are fair and reasonable.  Finally, the Court finds

26

27  [7] Petitioners arrived at the amount of $56,000.00 by adding the value of the SNT assets
    ($50,000.00), one year's annual estimated income ($1,000.00) and ten percent of the first
28  $500,000.00).  Hoffman Decl. at Exh. 8.

19CV1650-L(BLM)

that the method of distribution is fair, reasonable, and in the best interest of Ms. Garot. Accordingly, the Court **RECOMMENDS** that Judge Lorenz approve the proposed settlement, grant the petition for compromise of an incompetent adult, and issue an order requiring Plaintiffs and the County Defendants to comply with the terms of the settlement.

**IT IS HEREBY ORDERED** that any objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **April 7, 2023**.  The document should be captioned "Objections to Report and Recommendation."[8]

**IT IS SO ORDERED**.

Dated:  3/24/2023

Hon. Barbara L. Major
United States Magistrate Judge

---

[8] Although the federal statutory scheme provides for a 14-day objections period to a Magistrate Judge's Report and Recommendation, if all parties wish to waive the objections period, they should file a joint stipulation to that effect immediately, to allow the Court to adopt this Report and Recommendation without further delay. There will be no adverse consequences to any party who files objections or otherwise chooses not to waive the objection period.

17

19CV1650-L(BLM)