UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS RAINEY AND JUDY RAINEY, CO-CONSERVATORS, ON BEHALF OF COLLEEN GAROT,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO et al.,<br><br>Defendants. | Case No.: 19-cv-01650-L-SBC<br><br>**ORDER DENYING DEFENDANT QUOC TRAN, M.D.'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION (ECF 244)** |

Pending before the Court in this action alleging violations of Plaintiff's federal rights pursuant to 42 U.S.C. 1983 and violations of California law is Defendant Quoc Tran, M.D.'s ("Dr. Tran") Motion for Good Faith Settlement Determination. (Motion [ECF No. 244.]) Defendants County of San Diego ("County") filed a Response in Opposition. (County Oppo. [ECF No. 245.]) Defendants Michael Stewart, PhD., and Liberty Healthcare of California (collectively "Liberty Defendants") filed a Response in Opposition. (Liberty Oppo. [ECF No. 184.]) Defendant Dr. Tran filed a Reply. (Reply [ECF No. 251.] The matter is submitted on the briefs without oral argument. *See* Civ. L. R. 7.1(d)(1).  For the reasons stated below, Defendant Dr. Tran's Motion is denied without prejudice and with leave to amend.

//

## I. FACTUAL BACKGROUND[1]

On April 13, 2018, plaintiff Colleen Garot was arrested and taken to county jail (Fourth Amended Complaint at 8 (ECF 53).) At the time of her arrest, Ms. Garot displayed a black eye and forehead abrasions, and she claimed that these resulted from a neurological disorder and a fall five days earlier. (*Id.* at 8–9.) Early the next morning on April 14, Ms. Garot reported that she had fallen at some time in the night and "lost consciousness." (*Id.* at 9.) Medical staff noted a bump on the back of her head and gave her an icepack with instructions to return it "when done." (*Id.*) At about 11 p.m. that night, Ms. Garot was examined by Dr. Quoc Tran, who noted her multiple facial bruises and left-eye swelling. (*Id.*) The following day, April 15, Ms. Garot was placed in a safety cell because of her "repeated, nonsensical statements." (*Id.* at 10.) Over the next 36 hours, Ms. Garot's condition deteriorated: she hallucinated a cowboy and believed a dragonfly was on her arm. (*Id.* at 10–11.) At about 6:30 a.m. on April 16, 2018, she was observed walking naked around her cell, trying to climb the wall. (*Id.* at 11.) At 11:00 a.m., Dr. Friedrike Von Lintig examined Ms. Garot in her safety cell, but noted "no acute [m]edical issues." (*Id.*) Around 11:20 a.m., Ms. Garot suffered a seizure and was taken to the emergency room, where she was diagnosed with a skull fracture, a subdural hematoma, and encephalopathy. (*Id.*) She is now completely incapacitated. (*Id.*)

Ms. Garot's conservators sued the County of San Diego, its sheriff, and the numerous deputies and medical professionals with whom she had contact, alleging claims under 42 U.S.C. § 1983 and for professional negligence. (ECF 53.) Most of the defendants were employees of the County, but some were institutions—and their employees—with which the County had contracted to provide medical services. (ECF 200, at 9.) Plaintiff asserts that her past and future medical expenses likely exceed $8,400,000. (ECF 180-1, at 8.) She also seeks non-economic damages of an additional $16,800,000, exposing

---

[1] Unless noted otherwise, the facts are taken from the Fourth Amended Complaint

defendants to a total potential liability at trial of $25,200,000. (*Id.* at 9.) The Court approved a settlement between County Defendants and Plaintiff that provided for a payment of $9.5 million to Garot's conservators. (ECF 225).

Plaintiffs Thomas Rainey and Judy Rainey, in their capacities as conservators for Colleen Garot, have now reached a settlement agreement with Defendant Dr. Tran that provides that Dr. Tran will pay $775,379.96, the remainder of Dr. Tran's insurance policy limits, as consideration for a full release of claims. (Mot. at 8). Upon approval of the settlement, all non-contractual crossclaims for indemnity or contribution that the other parties may seek to bring against Dr. Tran will be barred. (*Id.*) Plaintiff and Dr. Tran now seek a good faith determination under California Code of Civil Procedure sections 877 and 877.6 as to this settlement. County of San Diego and Liberty Defendants oppose the motion. (ECF 245, 246.)

## II.  **DISCUSSION**

Under California law, "[w]here a release . . . is given in good faith before . . . judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights," the release shall "reduce the claims against the others in the amount stipulated by the release" and "discharge the party to whom it is given from all liability for any contribution to any other parties." Cal. Civ. Proc. Code § 877(a) & (b). A defendant may secure a determination that its settlement was reached in good faith by giving "notice of settlement to all parties and to the court, together with an application for determination of good faith settlement." Cal. Civ. Proc. Code § 877.6(a)(2). Non-settling parties are then given an opportunity to contest the good faith of the settlement. *Id.* If a court determines the settlement was entered in good faith, "any other joint tortfeasor or co-obligor" is barred from "any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. Proc. Code § 877.6(c). Federal courts hearing state-law claims based on supplemental jurisdiction apply sections 877 and 877.6, as substantive California law, to determinations

of good faith settlement. *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).

The court has broad discretion in deciding whether a settlement was made in good faith in the context of section 877.6. *Cahill v. San Diego Gas & Elec. Co.*, 194 Cal. App. 4th 939, 957 (2011). In making its determination, a court considers the factors set out in *Tech-Bilt v. Woodward-Clyde & Associates*, 38 Cal. 3d 488 (1985), which include: (1) "a rough approximation of plaintiffs' potential recovery and the settlor's proportionate liability"; (2) "the amount paid in settlement"; (3) "the allocation of settlement proceeds among plaintiffs"; (4) "a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial"; (5) "the financial conditions and insurance policy limits of settling defendants"; and (6) any evidence of "collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants." *Id.* at 499 ("*Tech-Bilt* Factors").

The court must base its determination on the information available at the time of settlement. *Id.* Once the settling defendant has made a showing of the settlement, the burden of proof shifts to the party asserting a lack of good faith. *City of Grand Terrace v. Super. Ct.*, 192 Cal. App. 3d 1251, 1261 (1987); *see also* Cal. Civ. Proc. Code § 877.6(d). That party must show "that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 38 Cal. 3d at 499–500. The policy goals of section 877.6 "include both the encouragement of settlements and the equitable allocation of costs among multiple tortfeasors." *Id.* at 498–99. Yet these goals are often in "inherent tension," and the court's determination of good faith "plays a key role in harmonizing" these dual objectives. *Bay Development Ltd. v. Super. Ct.*, 50 Cal. 3d 1012, 1018–19 (1990).

Under current Ninth Circuit law, there is no federal right of indemnification or contribution on a claim arising under 42 U.S.C. § 1983. *Hoa v. Riley*, 78 F. Supp. 3d 1138, 1145–46 (N.D. Cal. 2015) (collecting cases). Nor does 42 U.S.C. § 1988 permit importing rights of contribution or indemnification on a § 1983 claim from state law. *Id.* at 1147–48.

Therefore, when a court is assessing the reasonableness of a settlement that embraces both state-law negligence claims and § 1983 claims, it limits its analysis of potential contribution to the state-law claims. *See, e.g.*, *Frary v. Cnty. of Marin*, No. 12-CV-03928-MEJ, 2015 WL 3776394, at *3 (N.D. Cal. June 16, 2015) (confining *Tech-Bilt* analysis to potential liability under negligence claims and excluding claims arising under § 1983).

Defendant Dr. Tran contends he has entered the settlement with Plaintiff in good faith, the settlement agreement is fair and reasonable, and a good faith settlement determination by the Court will bar all current and future cross-complaints against Dr. Tran for implied indemnity, partial indemnity, equitable indemnity, or declaratory relief based on principles of comparative fault. (Mot. at 2).

The opposing Defendants argue that a manifest injustice would result if the Court granted Dr. Tran's Motion and extinguished the Defendants' equitable indemnity rights against Dr. Tran. (County Oppo. at 2; Liberty Oppo. at 2). Defendants argue that the Motion should be denied because (1) Dr. Tran failed to timely file and serve his moving papers within 28 days of the scheduled hearing date; (2) the settlement amount is far outside the ballpark of his potential liability; and (3) Dr. Tran has failed to provide evidence of his financial condition and insurance policy limits to show his inability to pay a larger amount of his share of liability. (County Oppo. at 2, 5-6; Liberty Oppo. at 3, 7).

A.   **Timeliness**

The Liberty and County Defendants contend that Defendant Tran's Motion should be stricken for failure to comply with Civil Local Rule 7.1(e)(1) because it was filed on November 15, 2023, two days after the required filing date. Dr. Tran counters that the alleged delay did not result in any prejudice and should therefore not preclude determination of good faith settlement. The Court agrees. Under Rule 7.1(e)(1), a party filing a motion, application or notice must file it a minimum of "twenty-eight (28) days prior to which the matter is noticed." Civ. L. Rule 7.1(e)(1). Here, Dr. Tran noticed his motion for December 11, 2023. Twenty-eight days prior to that date would have been November 13, 2023, but Dr. Tran submitted his motion on November 15, 2023.

The Court finds no prejudice to the opposing parties. County and Liberty Defendants became aware of the proposed settlement on October 23, 2023, when the parties were advised during a telephonic status conference of the settlement. Moreover, the opposing Defendants timely filed robust oppositions to Dr. Tran's motion. For these reasons, the Court denies County and Liberty Defendants' request to strike the Motion.

**B.     Approximation of Plaintiff's Potential Recovery and Settling Defendants' Proportionate Liability**

The court must consider the amount to be paid to plaintiff in relation to the settling parties' approximate proportionate liability under the first, second, and fourth *Tech-Bilt* factors. To meet the standard of good faith, the settlement amount must be "within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Tech-Bilt*, 38 Cal. 3d at 499. "California Civil Code section 1431.2(a) provides that liability for economic damages is joint and several, but liability for noneconomic damages is apportioned according to the principles of comparative fault." *C.B. v. City of Sonora*, 769 F.3d 1005, 1031 (9th Cir. 2014). California courts have interpreted California Civil Code section 1431.2 as limiting California Code of Civil Procedure section 877 to economic damages only. *See Greathouse v. Amcord, Inc.*, 35 Cal.App.4th 831, 838 (1995) A court is to determine whether the "settlement is grossly disproportionate to what a reasonable person at the time of settlement would estimate the settlor's liability to be." *City of Grand Terrace.,* 192 Cal. App. 3d at 1262.

The amount a plaintiff claims as damages is "not determinative in finding good faith." *West v. Super. Ct.*, 27 Cal. App. 4th 1625, 1636 (1994). Instead, the court makes a "'rough approximation' of what plaintiff would actually recover." *Id.* "[A] 'good faith' settlement does not call for perfect or even nearly perfect apportionment of liability." *N. Cnty. Contractor's Ass'n v. Touchstone Ins. Servs*., 27 Cal. App. 4th 1085, 1090 (1994) (citation omitted). The settlement amount need only be "in the ballpark" of the settling party's proportionate share of liability. *Tech-Bilt*, 38 Cal.3d at 499.

//

### 1. Approximation of Plaintiff's Potential Recovery

The only cause of action at issue here is the professional negligence of the medical providers. As previously determined by this Court, Plaintiffs' total potential recovery on the professional negligence claim is reasonably estimated at a minimum of $8,650,000 ($8,400,000 in economic damages plus $250,000 in non-economic damages under MICRA after judgement). (*See* Order Good Faith Settlement Determination at 7 (ECF No. 225).)

### 2. Settling Defendants' Proportionate Liability to Plaintiff

In addition to a settling defendant's liability to the plaintiff, "[p]otential liability for indemnity to a nonsettling defendant is an important consideration for the trial court in determining whether to approve a settlement by an alleged tortfeasor." *TSI Seismic Tenant Space, Inc. v. Super. Ct.*, 149 Cal. App. 4th 159, 166 (2007). A settling defendant must show, "through expert declarations or other means, that the proposed settlement is within the reasonable range permitted by the criterion of good faith." *Mattco Forge, Inc. v. Arthur Young & Co.,* 38 Cal. App. 4th 1337, 1351 (1995*).*

Here, the opposing Defendants submitted numerous deposition transcript excerpts that generally support a greater relative culpability on the part of Dr. Tran than the Liberty or County Defendants. For instance, Dr. Tran saw Garot on her second day in jail after the fall which caused her to lose consciousness. (Inman Dec., Ex. A (Dr. Tran Depo.) at 45:8-11 (ECF Nos. 245, 245-1).) According to his testimony, Dr. Tran noted that Garot had a bump on the back of her head from a recent fall "and that she had lost consciousness." (*Id*. at 39:13-17). Dr. Tran testified that he observed Garot's multiple facial bruises and "left perioribital swelling." (*Id*. at 49:6-9). In his report, Dr. Tran reported that Garot "had a chronic, unsteady gait and tremors and that her condition can be exacerbated, worsened by the alcohol/drug withdrawal and she admitted to recently using." (*Id*. at 55: 21-24). Dr. Tran concluded that Garot "had multiple falls, she did have some injuries and, my opinion, clinical opinion, was that these injuries were arrived from either drug or alcohol abuse and also possibly withdrawal." (*Id*. at 49:17-21). Yet Dr. Tran stated he did not order alcohol withdrawal protocols. (*Id*. at 59:13-15).  Despite having the authority to send Garot to the

ER, or order further testing, including a CT scan or MRI, Dr. Tran instead ordered that the nurses "continue to monitor" Garot. (*Id*. at 61: 8-25; 62: 1-7).

According to Dr. Tran's expert, Dr. Martin H. Weiss, "no act or omission by [Dr. Tran] caused or contributed to Plaintiff's claimed injuries" and that Garot did not have a subdural hematoma at the time of Dr. Tran's visit because she did not exhibit an altered mental state or decreased level of consciousness. (Tran Oppo., Eduardo Gonzalez Dec. Ex. B at ¶ 39(b) (ECF No. 251-1).) In addition, Dr. Tran argues that other Defendants, including Liberty Defendant's expert Richard Hayward, Ph.D. evaluated Ms. Garot after Dr. Tran saw her, and that none of them noted any indications that Ms. Garot required an urgent medical or neurological evaluation. (Reply at 4-5).

Opposing Defendants have submitted sufficient evidence from Dr. Tran's deposition testimony to support the conclusion that Dr. Tran's proposed settlement amount of $775,379.96 is not within a reasonable range considering his projected proportional liability. *City of Grand Terrace*, 192 Cal.App.3d at 1261. Moreover, Dr. Tran has not provided "substantial evidence that the subject settlement is in the ballpark." *Mattco Forge,* 38 Cal. App. 4th at 1351. Plaintiffs' total potential recovery on the professional negligence claim is reasonably estimated at a minimum of $8,650,000 yet the value of Dr. Tran's proposed settlement is $775,379. Considering Dr. Tran's training as a medical professional and his evaluation of Ms. Garot after her fall, this settlement appears to be "grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Torres v. Union Pacifica R.R. Co*., 157 Cal.App.3d 499, 509 (1984). Dr. Tran argues without support that because the proffered settlement amount constitutes the extent of his remaining insurance policy limits, it is therefore sufficient. This is not the test. Instead, opposing Defendants have carried their burden to show that that the settlement is "out of the ballpark" in relation to the *Tech-Bilt* factors and it is therefore inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 38 Cal. 3d at 499–500. For these reasons, the first, second, and fourth *Tech-Bilt* factors do not favor a good faith determination.

### 3. Financial Condition and Insurance Policy Limits of Settling Defendants

One of the factors under *Tech-Bilt* is the settlor's financial condition and insurance policy limits. *Tech-Bilt*, 38 Cal.3d at 499-500. A court may find a lack of good faith when the settling defendant's insurance policy limits far exceed the settlement amount. *See, e.g., Long Beach Mem'l Med. Ctr. v. Super. Ct.*, 874–75 (2009). This factor is meaningful only when the amount offered in settlement was not proportional to the defendant's projected liability, or when there is other evidence of bad faith. *See Long Beach Mem'l*, 172 Cal. App. 4th at 873–75 (finding initially that the settlement amount was not proportional and only then proceeding to label the proposed payout of ten percent of policy limits as "not defensible"); *Mattco Forge, Inc.* 38 Cal. App. 4th at 1352–53 (finding first "no substantial evidence the subject settlement is in the ballpark" and only then noting that the proposed payment "represented a mere 14 percent of the available policy limits").

Liberty and County Defendants argue that Dr. Tran has not provided evidence that this is the only insurance policy he has that potentially applies to this matter, nor has he provided evidence about his financial condition and his ability to pay. In response, Dr. Tran asserts that the $775,379 amount constitutes his full remaining insurance policy limits.

Dr. Tran has not provided the Court with sufficient evidence of his financial condition or insurance policy limits for the Court to determine whether the settlement was made in good faith. Instead of providing the Court with this information, Dr. Tran submitted the entirety of his Doctors Professional Liability Insurance Company, Inc. policy without pointing to relevant portions of the policy or noting whether it was the only policy Dr. Tran carried. Although this factor is not determinative of a good faith finding, it is of particular importance in light the determination above that the proffered $775,379 settlement is not within the ballpark of Dr. Tran's potential liability. *See Long Beach Mem'l*, 172 Cal. App. 4th at 873–75. The Court is unable to weigh this factor in light of the dearth of evidence provided by Dr. Tran, therefore the factor weighs against granting the good faith determination.

//

4. **Other *Tech-Bilt* Factors**

Finally, "the allocation of settlement proceeds among plaintiffs" is irrelevant here since there is only a single plaintiff. *Tech-Bilt,* 38 Cal. 3d at 499. And no party has alleged or presented any evidence of "collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants." *Id.* The Court therefore finds no grounds for concluding that these factors weigh against a finding of good faith.

### III. CONCLUSION AND ORDER

For the foregoing reasons, the Court DENIES the Motion for Good Faith Settlement Determination without prejudice and with leave to amend.

**IT IS SO ORDERED**

Dated: January 2, 2024

_____
Hon. M. James Lorenz
United States District Judge