UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS RAINEY AND JUDY RAINEY, CO-CONSERVATORS, ON BEHALF OF COLLEEN GAROT,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 3:19-cv-01650-AHG<br><br>**ORDER GRANTING EX PARTE PETITION FOR ORDER APPROVING SETTLEMENT INVOLVING INCOMPETENT ADULT AND FOR DISTRIBUTION OF SETTLEMENT FUNDS**<br><br>**[ECF No. 357]** |

Before the Court is the unopposed *Ex Parte* Petition for Order Approving Settlement Involving Incompetent Adult and for Distribution of Settlement Funds ("Petition"). ECF No. 357. After reviewing the Petition and all supporting documents, and for the reasons discussed below, the Court **GRANTS** the unopposed Petition and **APPROVES** the proposed settlement and distribution of funds as outlined below.

**I.    BACKGROUND**

According to the Fourth Amended Complaint, on April 13, 2018, San Diego Sheriff Deputies arrived at Ms. Colleen Garot's residence to evict her. ECF No. 53 ¶ 31. When they arrived, they observed that Ms. Garot had serious injuries including a black eye and bruising on her arms and feet. *Id.* at ¶ 32. Instead of requesting medical attention, they

arrested Ms. Garot based on an outstanding warrant and transported her to the county jail. *Id.* at ¶ 33. Though Ms. Garot's booking photograph clearly showed significant abrasions on her forehead, medical staff at the county jail responded "No" on a screening form that asked if the inmate had been recently hurt or injured. *Id.* at ¶¶ 34-35. On April 14, 2018, Ms. Garot informed medical staff at the jail that she fell and "kinda [] lost consciousness," resulting in a bump to the back of her head. *Id.* at ¶ 39. Staff gave Ms. Garot an ice pack. *Id.* Later that evening, staff observed that she had "chronic unsteady gait," tremors, and "multiple bruises" on her face. *Id.* at ¶ 41. The next day, Ms. Garot made non-sensical statements, showed a "significant disorganized" thought process, and began hallucinating. *Id.* at ¶ 45. On April 16, 2018, she was "naked and delusional," and attempted to climb the cell wall. *Id.* at ¶ 47. Minutes later, staff observed that Ms. Garot "was laying on her back with 'foamy like saliva' coming out from her mouth." *Id.* at 48. Staff waited three days before calling the paramedics. *Id.* Ms. Garot suffered several injuries including a skull fracture, acute respiratory failure, and a subdural hematoma. *Id.* at ¶ 49. She is now completely incapacitated. *Id.* at ¶ 50.

Plaintiffs' counsel provides that Ms. Garot is expected to "require lifelong involvement from multiple medical and surgical specialists, multidisciplinary neurorehabilitation, specialized durable medical equipment, medication management, diagnostic evaluations, and 24 hr./day skilled nursing care for all aspects of her care management, as well as mobility and activities of daily living." ECF No. 357 at 5.

Ms. Garot is an incompetent individual residing in San Diego, California. ECF No. 53 at ¶ 5. Plaintiffs Thomas Rainey and Judy Rainey are Ms. Garot's co-conservators. *Id.* Based on the allegations, Plaintiffs brought federal claims against Defendants for deliberate indifference to a substantial risk of harm and liability for unconstitutional custom, practice, or policy, and state-law claims for professional negligence, failure to summon medical care, and negligence. ECF No. 53.

On October 17, 2022, Defendants County of San Diego, William D. Gore, Steven Block, Arthur Doherty, Yaowaluck Hagg, Susan Conrad, Myra Rada-Gragasin, Christine

Eser, M. Germono, Susan Anguitay, Melissa Grant, Mabel Domingo, Ma Estavillo, Edna Gomez-Sanchez, and Helen Salter ("County Defendants") filed a Motion for Good Faith Settlement Determination and for the Court to Retain Jurisdiction to Enforce the Settlement. ECF No. 180. Per the settlement agreement, the County of San Diego agreed to pay on behalf of County Defendants $9.5 million as consideration for a full release of claims. ECF No. 180-1 at 8. On March 28, 2023, Judge Lorenz concluded that the settlement was made in good faith and granted the Ex Parte Petition for Order Approving Settlement Involving Incompetent Adult. ECF Nos. 228, 230.

On February 20, 2024, Defendants Angelito De La Cruz, Friedrike Von Lintig, Coast Correctional Medical Group, P.C., and Coast Hospitalist Medical Associates ("Coast Defendants") filed a Motion for Good Faith Settlement Determination. ECF No. 259. The settlement agreement required the Coast Defendants to pay $1 million for the benefit of Ms. Garot. ECF No. 259. On November 1, 2024, Judge Cheeks approved the proposed settlement, finding that it was "fair, reasonable, and in the best interests of the incompetent Plaintiff," including the proposed expenses, attorney fees, and method of distribution. ECF No. 288 at 11-12.

Subsequently, during a Settlement Conference before Judge Butcher, Plaintiffs settled their claims against the only remaining defendants—Quoc Tran, M.D. ("Tran") and Liberty Healthcare of California, Inc. ("Liberty"). ECF No. 345. On July 25, 2025, this case was referred to the undersigned to conduct all proceedings. ECF Nos. 349-351. As part of the settlement agreement between Plaintiffs, Tran, and Liberty, the parties agreed to seal the financial terms and conditions. ECF No. 352 at 2. Plaintiffs filed an unopposed Motion to Seal, which the Court granted; Plaintiffs then filed a sealed version of the agreement with the Court, along with a redacted version. ECF Nos. 352, 360.

On July 29, 2025, Plaintiffs filed the instant Petition seeking approval of the proposed settlement and method to distribute the funds. ECF No. 357. The Petition is unopposed. ECF Nos. 362-64, 366.

## II. LEGAL STANDARD

It is well-settled that courts have a special duty to safeguard the interests of litigants who are minors or incompetents in the context of settlements proposed in civil suits. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011); *see also* Fed. R. Civ. P. 17(c) (district courts "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."). "In the context of proposed settlements in suits involving [incompetent] plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the [incompetent plaintiff].'" *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*."). To facilitate courts within this district fulfilling the duty to safeguard, Local Rule 17.1(a) provides that "[n]o action by or on behalf of a minor or incompetent [] will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." CivLR. 17.1(a).[1]

The Ninth Circuit has established that courts reviewing the settlement of such a claim should "limit the scope of their review to the question [of] whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the

---

[1] This requires the Court to determine whether the settlement is in the best interests of the incompetent person, by considering not only the fairness of the settlement, but the structure and manner of the plan for the payment and distribution of the assets for the benefit of the incompetent person. Under the Local Rules, parties must submit the settlement to a magistrate judge for preliminary review of the structural components. *See* CivLR 17(a) ("All settlements and compromises must be reviewed by a magistrate judge before any order of approval shall issue.").

facts of the case [and] the specific claim [].” *Robidoux*, 638 F.3d at 1181–82. The Court should also “evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard.” *Id*. at 1182 (citing *Dacanay*, 573 F.2d at 1078). “So long as the net recovery” to each incompetent plaintiff “is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties.” *Robidoux*, 638 F.3d at 1182.

Significantly, the Ninth Circuit limited its decision in *Robidoux* to “cases involving the settlement of a minor's ***federal*** claims.” *Id.* at 1181–82 (emphasis added). Where a settlement involves state law claims, federal courts are generally guided by state law rather than by *Robidoux*. *J.T. by & Through Wolfe v. Tehachapi Unified Sch. Dist.*, No. 116CV01492DADJLT, 2019 WL 954783, at *2 (E.D. Cal. Feb. 27, 2019). *See also A.M.L. v. Cernaianu*, No. LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014) (collecting cases). The *A.M.L.* court noted that, although federal courts generally require such claims to “be settled in accordance with applicable state law,” the Ninth Circuit in *Robidoux* held such an approach “places undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery [].” *Id.* at *2 (quoting *Robidoux*, 638 F.3d at 1181) (other citation omitted). *But see Mitchell v. Riverstone Residential Grp.*, No. CIV. S-11-2202 LKK, 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) (“[A] number of district courts have applied the rule provided in *Robidoux* to evaluate the propriety of a settlement of a minor's state law claims as well”) (collecting cases).

Just like federal claims, an incompetent person's settlement of state law claims must also be approved by the Court. California Probate Code provides the applicable statutory scheme for approval of such a compromise under state law. *See* Cal. Prob. Code §§ 3601 *et seq*. The Court is tasked with evaluating the reasonableness of the settlement and determining whether the compromise is in the best interest of the incompetent person.

*A.M.L.*, 2014 WL 12588992, at *3 (citations omitted). In carrying out that task, the Court is afforded "broad power . . . to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it." *Goldberg v. Superior Court*, 23 Cal. App. 4th 1378, 1382 (Cal. Ct. App. 1994). *See also Pearson v. Superior Court*, 136 Cal. Rptr. 3d 455, 459 (Cal. Ct. App. 2012) (explaining that the purpose of requiring court approval of such a settlement is to "allow[] the guardians [] to effectively negotiate a settlement while at the same time protect[ing]" the incompetent person's interest by mandating court approval).

Because some substantive claims in this case are governed by California law, the Court will review the settlement with an eye towards the state standard, which focuses on the best interests of the incompetent person. However, to ensure that all potentially relevant factors are considered, the Court will also apply the *Robidoux* standard of determining whether the net amount distributed to the incompetent plaintiff (without regard to the proportion of the settlement allocated to adult co-plaintiffs or attorney fees) is "fair and reasonable." *See A.M.L.*, 2014 WL 12588992, at *3 (finding it unnecessary for the court to resolve whether *Robidoux* or state rules applied to approval of the compromise in case involving state tort law claims, because the proposed settlement would satisfy both standards).

### III.   DISCUSSION

To fulfill its special duty to safeguard the interests of Ms. Garot, the Court will analyze the proposed settlement, the proposed attorney fees, and the proposed method of disbursing the Ms. Garot's net recovery.

#### A.   Proposed Net Settlement Amount for Ms. Garot

In reviewing such a petition, "courts typically consider such information as the relative worth of the settlement amount, the circumstances of the settlement, counsel's explanation of their views and experiences in litigating these types of actions, and other, similar compromises that have been approved by courts." *J.T.*, 2019 WL 954783, at *2.

Taking all relevant considerations into account, the Court finds Ms. Garot's net recovery to be fair and reasonable under the circumstances.

The proposed settlement allows for the certainty of recovery for Ms. Garot, as opposed to the uncertainty associated with a jury verdict. The parties to the case reached a settlement before having to accrue the significant fees or costs associated with preparing for trial. Even if a greater recovery might have been possible at trial, an early settlement will provide funds to Ms. Garot that would not have been guaranteed otherwise. Therefore, the Court finds it is in the best interest of Ms. Garot to avoid protracted litigation and the burden, expense, and uncertainty of taking the case to trial.

Further, the entire net settlement amount will be placed into a Special Needs Trust. Plaintiffs will not need to use the settlement proceeds to fund Plaintiff's medical bills, as her medical expenses from the onset of the injuries until she received settlement proceeds from the County Defendants were paid by Medi-Cal. ECF No. 357 at 6. The total amount of the Medi-Cal lien is $463,724.40, and there are no other liens. ECF No. 357 at 6. Specific to the Medi-Cal lien, the County of San Diego is holding in trust $475,000.00 to satisfy the lien when the case is fully resolved. ECF No. 357 at 6. Plaintiffs plan to submit a request for the liens to be waived or reduced. ECF No. 357 at 6.[2]

Additionally, the Court views the settlement favorable to Ms. Garot given the potential for offsets arising from the settlements with the prior defendants (i.e., County Defendants and Coast Defendants).

Based upon a consideration of the facts, Plaintiffs' claims and asserted damages, and the risks associated with trial, the Court finds that the proposed settlement amount to be disbursed to Ms. Garot is fair and reasonable under both California and federal law standards.

---

[2] Plaintiffs request that "the Court order that the net amount of proceeds remaining from the $475,000.00, after the anticipated waiver or reduction, be paid to the special needs trust." ECF No. 357 at 6.

### B. Attorney Fees and Costs

Attorney fees and costs are typically controlled by statute, local rule, or local custom. In California, courts are required to approve the attorney fees to be paid for representation of an incompetent person. *See* Cal. Prob. Code § 3601; Cal. Rule of Ct. 7.955. The Probate Code requires courts to approve "reasonable expenses . . . including . . . attorney's fees." § 3601. Further, "[i]n all cases under . . . Probate Code sections 3600-3601, unless the court has approved the fee agreement in advance, the court must use a reasonable fee standard when approving and allowing the amount of attorney's fees payable from money or property paid or to be paid for the benefit of a [] person with a disability." Cal. Rules of Court 7.955(a)(1). To assess whether a request for attorney fees for services to a person with disability is reasonable, the court may consider various factors including the following:

(1) The fact that a person with a disability is involved and the circumstances of the person with a disability;

(2) The amount of the fee in proportion to the value of the services performed;

(3) The novelty and difficulty of the questions involved and the skill required to perform the legal services properly;

(4) The amount involved and the results obtained.

(5) The experience, reputation, and ability of the attorneys performing the legal services.

(6) The time and labor required.

(7) The informed consent of the representative of the disabled person to the fee; and

(8) Whether the fee is fixed, hourly, or contingent, and, if it is contingent, the risk of loss borne by the attorney and the amount of costs advanced by the attorney.

*See* California Rules of Court 7.955(b).

Plaintiffs' counsel seeks forty percent of the gross recovery. ECF No. 357 at 6. The Court finds this percentage reasonable for several reasons. First, Ms. Garot's conservators (her father and stepmother) agreed to this percentage when they executed a retainer agreement. ECF No. 357 at 7 ("[t]he Petitioners believe these fees are appropriate because

this case involved extensive work in the past six years of investigation, litigation, and thousands of hours of preparation, legal research, discovery, and briefing."). Second, the recovery in this settlement is significant—particularly given the chance for offset considering the prior two settlements in the matter—and the risk that the individual defendants could have received qualified immunity. Third, this case involved thousands of hours of legal work spread across six years of litigation, 18 individual defendants, and three entity defendants. ECF No. 357 at 7. Adding to the significant amount of resource required, Plaintiffs' counsel engaged eight retained experts and at least two other medical experts who consulted on the matter. ECF No. 357 at 7. Fourth, Plaintiffs' counsel has significant experience in the field. Mr. Eugene Iredale has more than 47 years of experience, including more than 25 years of experience in civil rights cases. ECF No. 357 at 10. Ms. Julia Yoo's last 26 years of experience has been focused primarily on Section 1983 cases involving claims like the ones at hand, while Mr. Steve Hoffman has spent the past 11 years focused on similar cases including tort claims against the government. ECF No. 357 at 10. Fifth, Plaintiffs' counsel took on a contingency assignment that bore a fair degree of risk, particularly given issues related to causation. ECF No. 357 at 10. Sixth, Plaintiffs' counsel advanced a significant amount of costs: $148,000.00 leading up to the $9.5 million settlement with the County Defendants and roughly $50,000 leading up to the $1 million settlement with the Coast Defendants. ECF No. 357 at 7. This conclusion is further warranted in light of Plaintiffs' counsel's willingness to materially depart from the rate agreed upon in their contract regarding settlement with the County Defendants (where Plaintiffs' counsel voluntarily reduced their attorney fees from 40% to 33 1/3% of the $9.5 million recovery from the County Defendants). ECF No. 357 at 7.

With respect to the costs of litigation, most costs have already been reimbursed to attorneys through the settlements with prior defendants. ECF No. 357 at 6. Plaintiffs' counsel has agreed to deduct from their attorney fees the $950.00 they incurred since the prior settlement in this matter. ECF No. 357 at 6.

Given the significant experience of Plaintiffs' counsel, the vast amount of resource spent spanning the past six years of litigation, the notable recovery counsel achieved for Plaintiffs, and the inherent risk and complexity in this type of litigation, the Court finds that the requested amount of attorney fees is reasonable and does not suggest that the settlement is unfair.

**C. Method of Disbursement**

Under CivLR 17.1(b)(1), settlements paid to an incompetent person who resides in California must be distributed in accordance with the California Probate Code. Under California Probate Code, courts can use a wide variety of methods for the disbursement of settlement funds to an incompetent person. *See* Cal. Prob. Code § 3600. *et seq*. The Court shall "upon application of counsel for the [] person with a disability, order that [] the remaining balance of any money and other property be paid to a special needs trust [] for the benefit of the [] person with a disability." Cal. Prob. Code, § 3611(c).

In the matter at hand, a Special Needs Trust was established specifically for the benefit of Ms. Garot. ECF No. 357 at 11. Judge John B. Scherling of the San Diego Superior Court appointed Elizabeth S. del Pozo and Cristina E. Tang as Co-Trustees and found that "the establishment of the Colleen Beth Garot Special Needs Trust, including all terms and provisions of said Trust, is in the Beneficiary's best interest." ECF No. 357-11 at 4. Ms. Garot's share of the settlement proceeds will be placed into a structured settlement annuity; monthly payments from the annuity will be deposited into the trust. ECF No. 357 at 10-11. In obtaining quotes for the structured settlement, Plaintiffs engaged a Certified Structured Settlement Consultant who has facilitated more than 100 structured settlements in state and federal courts. ECF No. 357 at 10. Though not dispositive, Ms. Garot's father and stepmother (Ms. Garot's co-conservators) testify that the settlement is in the best interest of Ms. Garot. ECF No. 357-2; ECF No. 357-3 at 2.

The proposed disbursement of the settlement amount meets the requirements of Section 3600, as the settlement funds will be distributed to a special needs trust for the

benefit of Ms. Garot. Therefore, the Court finds this distribution method fair and reasonable.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that the proposed settlement, proposed attorney fees, and proposed distribution method are fair, reasonable, and in the best interests of Ms. Garot. The Court **APPROVES** the proposed settlement, **GRANTS** the petition for compromise of an incompetent adult, **ORDERS** Plaintiffs, Tran, and Liberty to abide by the terms of the settlement agreement, and **ORDERS** that the net amount of proceeds remaining from the $475,000.00 being held in trust by the County of San Diego for the satisfaction of Medi-Cal liens be paid to the special needs trust after the anticipated waiver or reduction.

**IT IS SO ORDERED.**

Dated: September 4, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge